UNITED STATES of America, Plaintiff–Appellee,

v.

Hector RAMIREZ–JIMINEZ, Defendant–Appellant.

No. 91–50211.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 10, 1992.

Decided June 22, 1992.

---

11. To the extent the trustee delays selling the home to wait for it to appreciate, the debtor gets to live in it for free. If the debtor believes he is being prejudiced by the trustee's delay, he can move for abandonment. 11 U.S.C. § 554(b); Bankr.Rule 6007.

Grant L. Eddy, Ramona, Cal., for defendant-appellant.

X. Jay Alvarez, Asst. U.S. Atty., argued, Alana M. Wong, Asst. U.S. Atty., on the brief, San Diego, Cal., for plaintiff-appellee.

Before: POOLE, WIGGINS and LEAVY, Circuit Judges.

POOLE, Circuit Judge:

## I.

Appellant Hector Ramirez–Jiminez appeals from his jury conviction and sentence for two counts of transportation of illegal

aliens in violation of 8 U.S.C. § 1324(a)(1)(B). Appellant was stopped at approximately 11:30 p.m. on July 11, 1990, by United States Border Patrol agents at the San Clemente checkpoint. Agents noticed that the truck which Ramirez was driving was heavily loaded, and that he appeared nervous, sitting rigidly and staring straight ahead. Agents motioned for Ramirez to stop his truck. He at first ignored them, but then slowly came to a stop beyond where the agents were standing.

Ramirez provided the Border Patrol agents with a false name and claimed to be an American citizen. While walking to the back of the truck, a Border Patrol agent noticed that the outside walls of the cargo area of the truck were warm, indicating the possibility that the truck might contain human beings. A dog, trained to detect human odors, was summoned and alerted on the cargo area of the truck. Agents requested and were given permission to search the truck. Inside the cargo area they found 51 illegal aliens.

Appellant moved to dismiss the indictment based on the loss of testimonial evidence through the government's deportation of 49 of the 51 illegal aliens. Appellant also moved to suppress the evidence seized in the search of the truck, arguing that the stop of the truck was illegal. Both these motions were denied.

Ramirez was tried before a jury beginning on October 23, 1991, and found guilty on both counts. In imposing sentence, the court departed upward from the applicable guidelines range of four to ten months, and sentenced Ramirez to thirty months in custody and three years of supervised release.

Appellant alleges error in the denial of his motions to suppress and to dismiss the indictment. He also appeals the admission of evidence of his previous association with an alien smuggling operation, and of testimony regarding the false statements he made at the time of his arrest. Finally, he argues that the upward departure was improper. We affirm appellant's conviction, but vacate the sentence and remand for resentencing.

## II.

Before the district court, Ramirez argued that the stop of his truck was illegal, necessitating the suppression of all evidence seized in the search of the truck. He concedes, however, that the stop occurred at the truck scales connected with the San Clemente checkpoint. Thus, the stop of the vehicle was permissible as a "stop[ ] for brief questioning routinely conducted at permanent checkpoints." *United States v. Martinez–Fuerte*, 428 U.S. 543, 566, 96 S.Ct. 3074, 3086–87, 49 L.Ed.2d 1116 (1976); *see also United States v. Gabriel*, 625 F.2d 830, 832–833 (9th Cir.1980), *cert. denied sub nom. Palmer v. United States*, 449 U.S. 1113, 101 S.Ct. 925, 66 L.Ed.2d 843 (1981).

Ramirez argues for the first time on appeal that the checkpoint search was illegal because he was coerced into consenting to the search, and the search was not supported independently by probable cause. *See Martinez–Fuerte*, 428 U.S. at 567, 96 S.Ct. at 3087 ("[C]heckpoint searches are constitutional only if justified by consent or probable cause to search"). Since appellant did not argue a lack of consent below, we review the admission of the evidence seized in the search for plain error. *Cf. United States v. Segal*, 852 F.2d 1152, 1155 (9th Cir.1988).

Appellant argues that, because he had been detained and subjected to psychological coercion, his consent to the search was not voluntary. At the suppression hearing, however, Ramirez testified that during the stop he had not been threatened, screamed at, or struck. In fact, nothing in the record supports appellant's claim of undue psychological pressure being brought to bear. We have previously held, moreover, that valid consent may be given while detained, *United States v. Lindsey*, 877 F.2d 777, 783 (9th Cir.1989), and that a brief detention at a Border Patrol checkpoint is per se reasonable. *United States v. Taylor*, 934 F.2d 218, 220 (9th Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 971, 117 L.Ed.2d 136 (1992). We thus see no

plain error in the district court's refusal to suppress the evidence.

### III.

■ Ramirez argues that the district court erred by denying his motion to dismiss the indictment based on the government's deportation of 49 of the 51 illegal aliens found in the truck, thereby depriving him of testimonial evidence. To require reversal on such a claim, appellant must show both bad faith on the part of the Government and prejudice resulting from the Government's conduct. *United States v. Dring*, 930 F.2d 687, 693 (9th Cir.1991).[1] Ramirez has failed to even allege that the illegal aliens were deported in bad faith. Nor has he made a "plausible showing that the testimony of the deported witnesses would have been material and favorable to his defense, in ways not merely cumulative to the testimony of available witnesses." *United States v. Valenzuela–Bernal*, 458 U.S. 858, 873, 102 S.Ct. 3440, 3449, 73 L.Ed.2d 1193 (1982). The district court found that the testimony appellant claimed to have lost would have been cumulative. There is no evidence to suggest that this finding was clearly erroneous. *See United States v. Tafollo–Cardenas*, 897 F.2d 976, 978 (9th Cir.1990).

Finally, the district court found that appellant knowingly and intelligently waived his right to have the government retain custody of the 49 illegal aliens which were deported. Appellant denies that this waiver was knowing and intelligent, but points to no facts which would permit us to conclude that the district court's finding to the contrary was clearly erroneous. *See United States v. Lujan–Castro*, 602 F.2d 877, 878 (9th Cir.), *cert. denied*, 444 U.S. 945, 100 S.Ct. 306, 62 L.Ed.2d 314 (1979). We perceive no error in the denial of appellant's motion to dismiss.

### IV.

■ Ramirez appeals the admission of evidence that he had been observed at a residence used in the transportation of illegal aliens, in the company of an individual later arrested at the San Clemente checkpoint while driving a stolen truck carrying illegal aliens. An Immigration and Naturalization Service Special Agent testified that he had seen appellant at an illegal alien drop point. He also testified that the *modus operandi* of this alien smuggling operation was to steal bobtail trucks, load illegal aliens from a van into the stolen truck in San Diego, and then have another illegal alien drive the truck from San Diego to Los Angeles. These characteristics match in all particulars the facts of this case. The two illegal aliens transported by Ramirez testified that they had been taken to the truck by van from a drop house. The truck appellant was driving had been stolen, and he was himself an illegal alien. The district court admitted the evidence under Fed.R.Evid. 404(b), finding that the evidence was relevant to show that Ramirez had knowledge of the cargo he was carrying.

■ Rule 404(b) permits the introduction of evidence for purposes such as proving a person's "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed.R.Evid. 404(b). Before the prosecution may use such evidence against a defendant, however, it must establish that the evidence is probative of a material issue in the case, and that sufficient evidence exists for the jury to find that the defendant committed the other acts. *United States v. Sarault*, 840 F.2d 1479, 1485 (9th Cir.1988). Finally, as with all other relevant evidence, the probative value of the evidence must not be substantially outweighed by the danger of unfair prejudice. Fed.R.Evid. 403.

Knowledge is an element of the crime of transportation of illegal aliens, *see* 8 U.S.C. § 1324(a)(1)(B), and thus appellant's knowledge was a material issue in this case. Consequently, the government was permitted to prove Ramirez' knowledge through

---

**1.** Appellant argues that the burden is on the Government to make a showing that the witnesses were deported in good faith. We have already squarely rejected this argument. *Dring*, 930 F.2d at 694.

proof of his prior bad acts. *See United States v. Espinoza,* 578 F.2d 224, 227–228 (9th Cir.) (evidence of previous involvement in alien smuggling activities properly admitted to prove knowledge and intent), *cert. denied sub nom. Oropeza–Briones v. United States,* 439 U.S. 849, 99 S.Ct. 151, 58 L.Ed.2d 151 (1978); *United States v. Bibo–Rodriguez,* 922 F.2d 1398, 1401–1402 (9th Cir.) (Rule 404(b) evidence admissible to show that defendant was not "duped" and must have known he was carrying illegal drugs), *cert. denied,* —— U.S. ——, 111 S.Ct. 2861, 115 L.Ed.2d 1028 (1991).

Ramirez argues without elaboration that his prior act was too dissimilar from the act he was charged with to be admissible. When articulating tests for admission of evidence under Rule 404(b), we have sometimes made a showing of "similarity" a requirement. *See, e.g., Sarault,* 840 F.2d at 1485. At the same time, we have made it clear that "similarity is not always a prerequisite under Rule 404(b)." *United States v. Miller,* 874 F.2d 1255, 1269 (9th Cir.1989). The reason for this is that similarity, like proximity in time, is not a prerequisite having independent force, but rather a factor pertinent to rational appraisal of the probative value of the evidence in relation to the purpose for which it is being offered. As we explained in *United States v. Simtob,* 901 F.2d 799 (9th Cir.1990), evidence of other acts is admissible when "the prior act is similar and close enough in time to be relevant." *Id.* at 807; *see also* 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence* ¶ 404[12], at 404–90 (1991) ("The degree of similarity required, however, will depend on the evidential hypothesis which is being employed."); *United States v. Spillone,* 879 F.2d 514, 519 (9th Cir.1989), *cert. denied,* —— U.S. ——, 111 S.Ct. 210, 112 L.Ed.2d 170 (1990). Thus, for example, we have held that similarity is always required to prove identity of intent, since, "if the prior act is not similar, it does not tell the jury anything about what the defendant intended to do in his later action." *Miller,* 874 F.2d at 1269. Likewise, we have observed that "when evidence is offered to prove identity, *modus operandi,* or absence of mistake or accident, the prior criminal conduct is relevant only if it is similar to the offense charged." *United States v. Bailleaux,* 685 F.2d 1105, 1110 n. 1 (9th Cir.1982).

■ When offered to prove knowledge, however, the prior act need not be similar to the charged act as long as the prior act was one which would tend to make the existence of the defendant's knowledge more probable than it would be without the evidence. Fed.R.Evid. 401 (definition of "Relevant Evidence"). In this case, for example, the "other act" of appellant was his association with other smugglers on the premises of an alien smuggling operation employing a *modus operandi* strikingly similar to that employed in Ramirez' case. While this act bore little similarity to the act of driving a truck, it would certainly be relevant as tending to show that Ramirez was aware of, or at least acted in reckless disregard of, the fact that the cargo of the truck he was driving consisted of illegal aliens.

■■ The other requirements for admission of the evidence were also met. The Special Agent's testimony was sufficient to allow the jury to "reasonably conclude that the act occurred and that the defendant was the actor." *Huddleston v. United States,* 485 U.S. 681, 689, 108 S.Ct. 1496, 1501, 99 L.Ed.2d 771 (1987). In addition, the evidence was properly admissible under Fed.R.Evid. 403. While the trial court failed to make an explicit finding that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice, we will uphold admission of the evidence when it is clear from the record that the court implicitly made the necessary finding. *United States v. Sangrey,* 586 F.2d 1312, 1315 (9th Cir.1978). In this case, for example, the government filed a trial memorandum arguing for admission of the Rule 404(b) testimony, in which it reminded the judge of the necessity of weighing probative value and prejudice. *See Id.* at 1315 (trial judge was aware of Rule 403 requirement when defense counsel argued the issue in motion *in limine*).

The probative value of the Special Agent's testimony is to be measured by its tendency to make the existence of Ramirez' knowledge or intent more probable than it would be without the evidence. *See* Fed. R.Evid. 401. The unfair prejudice is measured by the extent to which the testimony "makes conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged." *Bailleaux*, 685 F.2d at 1111.

Ramirez' "other act" in this instance is not the sort of conduct which would provoke a strong and unfairly prejudicial emotional response from the jury. Rather, it is prejudicial only to the extent that it tends to prove the fact justifying its admission, namely that appellant had knowledge of his cargo of illegal aliens. We believe the trial judge adequately weighed the probative value and prejudicial effect of the "other acts" evidence, and that the evidence was properly admitted.

## V.

■■ Appellant argues that it was error to admit testimony that he falsely claimed United States citizenship, gave a false name to his arresting officers, and admitted that his last entry into the United States was in March 1989. Appellant's argument that this evidence was improperly admitted assumes that the testimony encompassed "other crimes," the evidence of which should be governed by Fed.R.Evid. 404(b). Appellant also argues that the probative value of the testimony was substantially outweighed by the danger of unfair prejudice. The government argues that, to the contrary, the testimony objected to by appellant concerned acts made during and in furtherance of the crimes for which appellant was indicted, and thus was not governed by Rule 404(b) at all.

■ We review *de novo* whether the false statements Ramirez made in the course of his arrest are " 'other crimes' evidence beyond the scope of the indictment and admissible only in limited circumstances under Fed.R.Evid. 404(b)." *United States v. Mundi*, 892 F.2d 817, 820 (9th Cir.1989), *cert. denied*, —— U.S. ——, 111 S.Ct. 1072, 112 L.Ed.2d 1178 (1991). We have previously held that "[e]vidence should not be treated as 'other crimes' evidence when 'the evidence concerning the ['other'] act and the evidence concerning the crime charged are inextricably intertwined." *United States v. Soliman*, 813 F.2d 277, 279 (9th Cir.1987) (quoting *United States v. Aleman*, 592 F.2d 881, 885 (5th Cir.1979). In such cases, the policies supporting the exclusion of evidence under Rule 404(b) are inapplicable, since the evidence is not being presented to "prove the character of a person in order to show action in conformity therewith." Fed. R.Evid. 404(b). Instead, the evidence is "direct evidence," used to flesh out the circumstances surrounding the crime with which the defendant has been charged, thereby allowing the jury to make sense of the testimony in its proper context.

In this case, for instance, the evidence that Ramirez had lied to government agents was not evidence of a remote and distinct "bad act," introduced to allow the jury to draw the improper inference that Ramirez was a liar, and that transporting illegal aliens was somehow in conformity with his character as a liar. Instead, Ramirez' statements to the officers came in the course of the conduct with which he was charged, and were probative of his consciousness that his conduct was illegal. *See United States v. Perkins*, 937 F.2d 1397, 1401–1402 (9th Cir.1991). Thus, the trial court did not commit plain error in allowing the testimony to be admitted, so long as the evidence was admissible under Rule 403.

While the knowledge that Ramirez had lied to law enforcement agents might tend to taint his character in the minds of the jury, it is unlikely that it would awaken in the jury an irrational or emotional desire to punish Ramirez, leading the jury to convict him based on his character alone. Instead, the main source of prejudice would come from the jury drawing a permissible inference—namely that appellant was cognizant

of the illegal act he was committing, and was therefore lying to cover his guilt. The district court thus did not err in allowing the agents, in the course of their testimony, to make reference to the false statements Ramirez had made at the time of his arrest.

## VI.

■ Ramirez alleges error in the district court's refusal to grant his motion for acquittal under Fed.R.Crim.P. 29. He also argues on appeal that the jury verdict was not supported by sufficient evidence. Appellant would have us hold that since the government failed to rebut his testimony, which asserted his innocence and offered an alternative explanation for the events in question, a reasonable doubt was raised concerning his guilt. We reject this claim.

In reviewing the denial of the Rule 29 motion, and the appeal of the jury verdict based on the sufficiency of the evidence, we must determine "whether, when viewed in the light most favorable to the government, the evidence adduced at trial was sufficient for a rational jury to find [the appellant] guilty beyond a reasonable doubt." *Mundi*, 892 F.2d at 820–821. Appellant concedes that he was, in fact, driving a truck containing the two illegal aliens, the transportation of whom formed the basis of the indictment. The sole issue to be decided by the jury was thus whether defendant possessed the requisite state of mind to commit the crimes charged. Based on the evidence presented, a rational juror could have inferred that appellant must have known that he was transporting illegal aliens, or at least acted in reckless disregard of that fact. Moreover, the jury was not required to accept his exculpatory testimony, even if it was not directly rebutted by the government.

## VII.

■ Appellant argues that the upward departure was improper because he did not receive adequate notice to allow "meaningful opportunity to comment" on the departure pursuant to Fed.R.Crim.P. 32. Ramirez concedes, however, that the presentence report identified the grounds for departure, and recommended a departure on those grounds. This was adequate notice. *United States v. Ramirez Acosta*, 895 F.2d 597, 601 (1990).

## VIII.

■ We follow a three step process in reviewing sentences imposed outside the guidelines range pursuant to 18 U.S.C. § 3553(b). First, we consider whether the district court had legal authority to depart. Second, the factual findings supporting the existence of the identified circumstance are reviewed for clear error. Third, we determine whether the extent of departure was "unreasonable." *United States v. Lira–Barraza*, 941 F.2d 745, 746–747 (9th Cir. 1991) (en banc).

■ The district court's authority to depart upward depends upon it identifying an aggravating circumstance of a kind or degree not adequately considered by the Sentencing Commission in formulating the guidelines. 18 U.S.C. § 3553(b). The district court in this case made it clear that the upward departure was based entirely on the large number of aliens involved. The Sentencing Commission explicitly noted this as a possible grounds for upward departure: "[t]he Commission has not considered offenses involving large numbers of aliens or dangerous or inhumane treatment. An upward departure should be considered in those circumstances." U.S.S.G. § 2L1.1, Note 8. This express statement "established beyond argument that departure was legally authorized." *Lira–Barraza*, 941 F.2d at 746; *see also United States v. Martinez–Gonzalez*, 962 F.2d 874, 875–76 (9th Cir.1992) (large number of aliens proper basis for upward departure). The record fully supports the district court's finding that appellant was transporting a large number of aliens.

■ The reasonableness of the departure is, however, open to question since the district court failed to adequately justify the extent of the upward departure. The district court relied on a proposed amendment to the Sentencing Guidelines in determining the appropriate departure. This proposed amendment was subsequently withdrawn. Under *Lira–Barraza*, the reasonableness of "departure sentences are to

be determined in light of the structure, standards, and policies of the Act and Guidelines." 941 F.2d 745. Here, the district court made no effort to tie the departure to the Guidelines, but rather accepted without analysis the proposed amendment to the Guidelines.

The government argues that *Lira–Barraza* should not be applied retroactively. *Lira–Barraza* itself made clear, however, that it was only following *United States v. Pearson,* 911 F.2d 186, 190–191 (9th Cir.1990), in requiring departures to be justified by analogy to the structure of the Guidelines. In any case, retroactive application of judicial decisions is the rule, and the government has failed to demonstrate how applying *Lira–Barraza* in this case would establishes a new principle of law, retard the purposes of the rule in question, and produce substantial inequitable results. *See United States v. Robinson,* 958 F.2d 268, 271 (9th Cir.1992). We thus must vacate appellant's sentence, and remand to the district court for a "reasoned explanation of the extent of the departure founded on the structure, standards and policies of the Act and Guidelines." *Lira–Barraza,* 941 F.2d at 751.

Appellant's conviction is AFFIRMED. The sentence is VACATED, and the case is REMANDED for resentencing.