24 F.3d 250
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Maria Luisa JIMENEZ, aka Maria Rumbo-Lopez, Defendant-Appellant.
 No. 93-50506.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 9, 1994.
Decided April 26, 1994.
 
 Before: BRIGHT,* WIGGINS, and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Maria Jimenez, a lawful resident of the United States, drove Adriana Vasquez-Lara, an illegal alien, through a customs checkpoint in California. After an immigration agent discovered that Vasquez-Lara carried false identification documents, he arrested both Jimenez and Vasquez-Lara. Jimenez now appeals her conviction for transporting an illegal alien within the United States in violation of 8 U.S.C. Sec. 1324(a)(1)(B) (1988).
 
 
 3
 Specifically, Jimenez contends the district court erred in: (1) denying her motion to dismiss the indictment based on selective prosecution; (2) denying her motion for a continuance to conduct discovery on the selective prosecution claim; (3) allowing into evidence an eight-year-old conviction; (4) allowing into evidence the hearsay statements of an alleged coconspirator whose identity remains unknown; (5) issuing an erroneous jury instruction on the knowledge requirement for the offense; and (6) denying her motion for acquittal. We affirm.
 
 I. BACKGROUND
 
 4
 Vasquez-Lara's trial testimony explained the facts underlying the charge brought against Jimenez. Vasquez-Lara testified that on June 24, 1992, an unknown man (or "coyote"[1]) transported her into the United States. Vasquez-Lara, a Mexican citizen, had no legal right to enter the United States at that time. Vasquez-Lara had previously agreed to pay the coyote $500.00 in exchange for transportation between Tijuana and Sacramento. The coyote provided fake identification papers for Vasquez-Lara which successfully got her through at the United States-Mexico border. The coyote also informed Vasquez-Lara that he planned to drop her off in San Ysidro, California, where another person would be waiting to transport her to Santa Ana. The coyote promised to meet Vasquez-Lara in Santa Ana to complete the trip to Sacramento.
 
 
 5
 Vasquez-Lara further testified that after entering the United States the coyote brought her to a 7-11 parking lot in San Ysidro and told her to leave his vehicle and get into a white pickup truck. After Vasquez-Lara entered the white pickup, defendant Jimenez got in on the driver's side, and commenced driving north. Before leaving the San Ysidro area Jimenez asked to see Vasquez-Lara's identification papers.
 
 
 6
 When the defendant and Vasquez-Lara reached the San Clemente checkpoint, an immigration agent asked Vasquez-Lara to produce her papers and repeat the name on the documents. On inspection, the agent suspected the documents did not belong to Vasquez-Lara, and sent the car to a second checkpoint. There, an agent examined the documents and found that Vasquez-Lara's fingerprints did not match those on her identification card. Immigration officials arrested both Jimenez and Vasquez-Lara immediately.
 
 
 7
 At trial, Jimenez stated that she indeed drove Vasquez-Lara from San Ysidro to San Clemente but that she knew nothing about Vasquez-Lara's illegal status at the time. Jimenez adduced testimony to show that she and Vasquez-Lara arrived at the San Ysidro parking lot at the same time by mere coincidence.[2]
 
 
 8
 Prior to this incident, Jimenez had been convicted of two felonies involving the illegal transportation of aliens and four misdemeanors of illegal entry.
 
 
 9
 A grand jury indicted Jimenez on one count of violating 8 U.S.C. Sec. 1342(a)(1)(B), which reads:
 
 
 10
 (1) Any person who--
 
 
 11
 (B) knowing or in reckless disregard of the fact that an alien ... remains in the United States in violation of law, transports ... such alien within the United States ... in furtherance of such violation of law;
 
 
 12
 shall be fined ... or imprisoned....
 
 
 13
 The indictment tracked the language of Sec. 1324, but substituted an "and" in place of the word "or" at the beginning of Section (B). The jury instruction issued by the district court followed the language of the statute and used "or", to which Jimenez objected unsuccessfully.
 
 
 14
 Before her trial, Jimenez moved for a dismissal on grounds of selective prosecution. Jimenez claimed that certain prominent individuals, including attorney general nominee Zoe Baird and then-New Jersey gubernatorial candidate (now Governor) Christine Todd Whitman, "harbored" aliens in violation of Sec. 1324 but avoided prosecution because of their wealth, ethnicity, and political connections. Jimenez also moved for a continuance to permit additional discovery on her selective prosecution claim; she proposed to depose Whitman, Baird and others by phone, and to compile statistics on prosecutions under Sec. 1324. The trial judge denied both motions. The trial court also denied Jimenez' motion for judgment of acquittal pursuant to Fed.R.Crim.P. 29.
 
 
 15
 Jimenez also sought to have excluded from evidence her 1983 conviction for serving as an accessory to the transportation of illegal aliens, and the hearsay statements of the unknown man which the prosecution introduced into evidence through Vasquez-Lara. The district court admitted both pieces of evidence over Jimenez' objections. The jury convicted Jimenez, who timely appealed.
 
 II. DISCUSSION
 A. Selective Prosecution
 
 16
 Jimenez contends the district court erred in denying her motion to dismiss based on selective prosecution. We review a defendant's failure to establish a prima facie case of selective prosecution for clear error. United States v. Gutierrez, 990 F.2d 472, 475 (9th Cir.1993).
 
 
 17
 To establish a prima facie case of selective prosecution the plaintiff must show both (1) that others similarly situated have not been prosecuted (e.g., a control group); and (2) that the current prosecution is based on an impermissible motive. Id.
 
 
 18
 Jimenez argues that she established a control group of five individuals--Zoe Baird and her husband, Christine Todd Whitman and her husband, and also New Jersey gubernatorial candidate Cary Edwards--all of whom admitted to employing illegal aliens as housekeepers, and none of whom were prosecuted under 8 U.S.C. Sec. 1324. We disagree.
 
 
 19
 A control group must consist of persons similarly situated to the complainant. The government asserts that it selected Jimenez for prosecution largely because of her two prior related felonies and four prior related misdemeanors. None of the members of Jimenez' purported control group had been convicted of alien-related offenses prior to disclosing that they had employed illegal aliens as domestic workers. Therefore, these individuals were not similarly situated to Jimenez, a six-time violator of the immigration laws. Lack of a control group defeats Jimenez' claim of selective prosecution. Moreover, Jimenez failed to produce any evidence showing the government had an impermissible motive in deciding to prosecute her. The district court did not clearly err in denying Jimenez' motion for dismissal.
 
 
 20
 B. Denial of continuance and evidentiary hearing
 
 
 21
 We review a district court's decision to limit discovery in a selective prosecution case for abuse of discretion. United States v. Bourgeois, 964 F.2d 935, 937 (9th Cir.), cert. denied, 113 S.Ct. 290 (1992). We apply the same standard to a denial of an evidentiary hearing. United States v. Ayers, 924 F.2d 1468, 1481 (9th Cir.1991).
 
 
 22
 To gain discovery from the government in a selective prosecution case, the defendant must meet a high threshold: "a defendant must present specific facts, not mere allegations, which establish a colorable basis for the existence of both discriminatory application of a law and discriminatory intent on the part of government actors." Bourgeois, 964 F.2d at 939.
 
 
 23
 After carefully reviewing the record, we agree with the district court's conclusion that Jimenez failed to present facts establishing discriminatory application of the law or discriminatory intent. The district court did not abuse its discretion in denying the continuance or the evidentiary hearing.
 
 C. Jimenez' 1983 conviction
 
 24
 The trial court admitted into evidence Jimenez' 1983 felony conviction for serving as an accessory after the fact to bringing aliens into the United States. We review the admissibility of prior convictions under Federal Rule of Evidence 404(b) for an abuse of discretion. United States v. Lopez-Martinez, 725 F.2d 471, 477 (9th Cir.), cert. denied, 469 U.S. 837 (1984).
 
 
 25
 Under Rule 404(b), a party may not introduce evidence of past crimes to prove character in order to show action in conformity therewith; however, the Rule permits introduction of past act evidence to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake." Fed.R.Evid. 404(b). Courts may admit evidence of prior bad acts to show intent, motive, or absence of mistake only when those acts are similar to the present charge and not too remote in time. United States v. Ramirez-Jiminez, 967 F.2d 1321, 1327 (9th Cir.1992); see also United States v. Arambula-Ruiz, 987 F.2d 599, 602 (9th Cir.1993) (evidence must also prove a material element of the offense and have sufficient factual support).
 
 
 26
 Jimenez contends that her 1983 conviction as an accessory differs significantly from the present charge, and is too remote in time to be admissible. We disagree.
 
 
 27
 There exists sufficient similarity between the acts to support admissibility because in both offenses the defendant transported illegal aliens into or within the United States. See United States v. Eufracio-Torres, 890 F.2d 266, 272 (10th Cir.1989) (earlier conviction for illegal entry sufficiently similar to transport under Sec. 1324(a)(1)(B) to permit admissibility of prior conviction to infer knowledge), cert. denied, 494 U.S. 1008 (1990); Ramirez-Jiminez, 967 F.2d at 1326 (evidence that in past defendant had previously been observed at residence used for harboring aliens admissible to show knowledge or reckless disregard in subsequent trial for transporting aliens).[3]
 
 
 28
 As to remoteness, we have previously admitted convictions older than eight years to show knowledge, intent, or lack of mistake. United States v. Ross, 886 F.2d 264, 267 (9th Cir.1989) (thirteen-year-old conviction admissible), cert. denied, 494 U.S. 1083 (1990); United States v. Spillone, 879 F.2d 514, 518 (9th Cir.1989) (ten-year-old conviction admissible), cert. denied, 498 U.S. 864, 878 (1990). The district court did not abuse its discretion in admitting the eight-year-old conviction.
 
 
 29
 Jimenez correctly asserts that courts determining the admissibility of prior bad act evidence must also examine the evidence under Fed.R.Evid. 403. Arambula-Ruiz, 987 F.2d at 602. While the excerpts from the record provided to this court do not indicate that the district court specifically took up the Rule 403 question, our review of the record reveals that the defendant failed to show at trial (and on this appeal) that the risk of unfair prejudice substantially outweighed the earlier conviction's significant probative value. The district court did not abuse its discretion in permitting the evidence to come in at trial.
 
 D. Hearsay statements of unknown man
 
 30
 Jimenez contends the district court erred in permitting Vasquez-Lara to testify to the hearsay statements of the unidentified man who drove her from Tijuana to San Ysidro. The district court admitted the statements as non-hearsay admissions by a coconspirator under Fed.R.Evid. 801(d)(2).[3] "We review a district court's decision to admit evidence of a co-conspirator's declaration for abuse of discretion." United States v. Peralta, 941 F.2d 1003, 1006 (9th Cir.1991), cert. denied, 112 S.Ct. 1484 (1992). We review the district court's factual findings regarding the existence of a conspiracy and whether the challenged statements were made "in furtherance of" the conspiracy, for clear error. Id.; United States v. Vowiell, 869 F.2d 1264, 1267 (9th Cir.1989).
 
 
 31
 Before admitting a coconspirator's statement over a hearsay objection, "[t]here must be evidence that there was a conspiracy involving the declarant and the nonoffering party, and that the statement was made 'during the course and in furtherance of the conspiracy.' " Bourjaily v. United States, 483 U.S. 171, 175 (1987) (quoting Fed.R.Evid. 801(d)(2)(E)). A district court may consider the proffered coconspirator's statements in making this determination, United States v. Gordon, 844 F.2d 1397, 1402 (9th Cir.1988), but there must also exist some evidence, apart from the proffered statements, of the existence of the conspiracy and the defendant's involvement in it. Id.
 
 
 32
 Jimenez contends that even if the coyote's statements are taken into consideration, the government failed to introduce evidence connecting Jimenez to the alleged conspiracy. We disagree. The government furnished evidence sufficient for the jury to find, by a preponderance of the evidence, that the conspiracy existed, that Jimenez participated in it, and that the coyote's statements were made in furtherance of it. See E.W. French & Sons, Inc. v. General Portland Inc., 885 F.2d 1392, 1397 (9th Cir.1989) (preponderance of the evidence standard applies when determining if offering party's evidence established existence of conspiracy). The coyote's statements met the requirement of "furthering" the conspiracy because they provided necessary instructions and logistical information to Vasquez-Lara.
 
 
 33
 Even without the coyote's hearsay statements, the government introduced sufficient evidence of the conspiracy, and of Jimenez' participation. Because Vasquez-Lara testified to both the words and acts of the coyote, her narrative provided "some evidence" of the conspiracy, and of Jimenez' participation in it, apart from the statements challenged as hearsay (e.g., "I will drive you to San Ysidro, where someone else will pick you up"). See Gordon, 844 F.2d at 1402 (in addition to the proffered hearsay statements, there must be "some evidence" of the conspiracy and defendant's participation).[4]
 
 
 34
 The district court did not abuse its discretion in admitting the challenged statements.
 
 E. Propriety of jury instruction
 
 35
 The district court used the disjunctive "or" (as in, "knew or was in reckless disregard") when instructing the jury on the mental state required to violate 8 U.S.C. Sec. 1324(a)(1)(B). Jimenez contends that because the indictment charged her with transporting an alien "... knowing and in reckless disregard of the fact" of the alien's illegal status, the district court erred in instructing using the disjunctive "or".
 
 
 36
 United States v. Carter, 454 F.2d 525, 526 (9th Cir.1972), disposes of Jimenez' contention. Addressing the same argument, we held: " 'it is still proper to charge conjunctively the elements of a crime which is denounced disjunctively in the statute, and a finding of any one of the said elements will support a verdict of guilty.' " Id. (quoting Arellanes v. United States, 302 F.2d 603, 609 (9th Cir.1962)). The law has not changed since Carter and thus the district court did not err.
 
 F. Denial of motion for acquittal
 
 37
 The district court denied Jimenez' motion for acquittal pursuant to Fed.R.Crim.P. 29. Viewing the evidence in the light most favorable to the government, we review that denial "to determine whether any rational trier of fact could find the defendant guilty beyond a reasonable doubt." United States v. Brannan, 898 F.2d 107, 109 (9th Cir.), cert. denied, 498 U.S. 833 (1990). We have no trouble concluding that based on the evidence presented a rational trier of fact could have found Jimenez guilty beyond a reasonable doubt.
 
 III. CONCLUSION
 
 38
 Having determined that none of Jimenez' points of appeal has merit, we affirm the decision of the district court.
 
 
 39
 AFFIRMED.
 
 
 
 *
 Honorable Myron H. Bright, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or for the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 We have previously referred to a person engaged in the profession of smuggling aliens as a "coyote", see Bernal-Zazueta v. United States, 225 F.2d 64, 67 (9th Cir.1955) or a "pollero", see United States v. Valenzuela-Bernal, 647 F.2d 72, 73 (9th Cir.1981), rev'd on other grounds, 458 U.S. 858 (1982)
 
 
 [2]
 Specifically, Jimenez and other defense witnesses testified that on the date of June 24, 1992, Jimenez went to Chula Vista to pay a $300.00 debt to Sabina Rodriguez. At Rodriguez' house, Jimenez met Rodriguez' husband Carlos Dominguez, and drove him to San Ysidro at his request. According to Jimenez, after she dropped Dominguez off, she had a cup of coffee at the 7-11, and intended to pick up a vacuum cleaner which she had inadvertently left at her job site, when a man approached her asking whether Jimenez could give Vasquez-Lara a lift north. Jimenez testified that after she agreed, she examined Vasquez-Lara's papers for the express purpose of avoiding the transport of an illegal alien, a crime for which Jimenez had previously been convicted twice
 
 
 [3]
 We also note that when offered to prove knowledge, " 'the prior act need not be similar to the charged act as long as the prior act was one which would tend to make the existence of the defendant's knowledge more probable than it would be without the evidence.' " Arambula-Ruiz, 987 F.2d at 603 (quoting Ramirez-Jiminez, 967 F.2d at 1326). The government proffered the 1983 conviction to refute Jimenez' claim of lack of knowledge. Thus, the district court could rightly have admitted the 1983 conviction based on either similarity to the present charge or the fact that the evidence was offered to show knowledge
 
 
 [3]
 This rule states:
 (d) Statements which are not hearsay. A statement is not hearsay if--
 ....
 (2) Admission by party-opponent. The statement is offered against a party and is ... (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.
 Fed.R.Evid. 801(d)(2)(E).
 
 
 [4]
 We note that our entire analysis of this issue has been predicated on the assumption that the coyote's statements met the definition of hearsay under Fed.R.Evid. 801(c): " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." This assumption is highly debatable, however. We question whether the statements were offered by the government for the hearsay purpose of proving the truth of the matter asserted in those statements, or whether in fact the government introduced the statements to explain Vasquez-Lara's motivation in traveling with the unknown man, then getting out of his car and into Jimenez' truck