43 F.3d 1480
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert BELTRAN, Defendant-Appellant.
 No. 94-10036.
 United States Court of Appeals, Ninth Circuit.
 Submitted Dec. 6, 1994.*
Decided Dec. 14, 1994.
 
 Before: D.W. NELSON, HALL, and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Robert Beltran appeals his conviction following a jury trial for aiding and abetting the delivery, receipt, and possession of a stolen United States Treasury check in violation of 18 U.S.C. Secs. 2, 510(b), 641, 2315. Beltran contends, first, that the district court abused its discretion by allowing the government to introduce evidence of other bad acts, and second, that his conviction is not supported by sufficient evidence of criminal intent. We have jurisdiction under 28 U.S.C. Sec. 1291 and affirm.
 
 
 3
 * Facts
 
 
 4
 Robert Beltran associated with Esther Chan in an attempt to raise funds to finance a golf course. In turn, Chan convinced Albert Cheung to invest in Beltran's golf course.
 
 
 5
 Cheung gave Beltran a $20,000 check for the golf course, which Beltran used to buy a car from Ronald Macko on April 3, 1993. Beltran signed the check over to Macko, explaining that he had not yet opened a corporate bank account. In fact, not only had Beltran had a corporate account which the bank had closed in 1992, he had sold the corporation several months earlier.
 
 
 6
 On May 7, 1993, Chan and Beltran picked up a package at the airport. The package, from Beltran's co-defendant, Dean Shafer, contained four stolen checks. The first check was a United States Treasury check payable to Foundation Health Federal Services in the amount of $899,582.71 for the reimbursement of a heart and lung transplant. The criminal charges against Beltran arise from this Foundation Health check. Three other checks, payable to G & G Produce, totaled $131,093.70 and represented payments from restaurants for fruits and vegetables.
 
 
 7
 That same day, Beltran contacted Macko and asked for his help in cashing the Foundation Health check along with three other checks from Shafer's company to investor Cheung. Beltran told Macko that the checks were for his golf course and again explained that he had not had time to open a corporate account. Beltran and Chan accompanied Macko to the bank, but Macko's bank refused to cash the third-party checks.
 
 
 8
 Beltran then deposited the Foundation Health check into his daughter's trust account at his own bank. Beltran told bank employees that the check was a settlement for a carpal tunnel injury he received as a truckdriver. The bank placed a hold on the check and later learned that the endorsement was forged and the check stolen.
 
 
 9
 On May 18, 1993, Beltran and Chan again met with Macko in an attempt to cash the three stolen G & G Produce checks, which Shafer had sent them earlier that month. In exchange for depositing the checks into his own account, Macko wrote checks totalling $100,000 to Chan, leaving Macko with a $31,093.70 profit.
 
 
 10
 Beltran cast himself as a "Walter Mitty" character, a dreamer preoccupied with his planned golf course and ignorant of any criminal activity by Chan and Shafer. Beltran called David Christenson, who had purchased the golf course corporation the preceding year, to show that Beltran's dream was legitimate. During cross-examination, Christenson testified that he was unaware that the corporation had a closed bank account.
 
 II
 Admissibility of Evidence of Other Acts
 
 11
 Beltran argues that the district court erred by allowing the government to introduce evidence of the other checks and the closed corporate account as other acts evidence. Beltran asserts that the sole purpose of the evidence was to tarnish Beltran's character and to prove his guilt by association with others.
 
 
 12
 We review for abuse of discretion the introduction of Rule 404(b) evidence. United States v. Bibo-Rodriguez, 922 F.2d 1398, 1401 (9th Cir.), cert. denied, 501 U.S. 1234 (1991). When a defendant fails to object, however, we review for plain error. United States v. Palmer, 3 F.3d 300, 304 (9th Cir.1993), cert. denied, 114 S.Ct. 1120 (1994).
 
 
 13
 Federal Rule of Evidence 404(b) bars the admission of evidence of other crimes, wrongs, or acts to prove an individual's propensity to commit the crime charged. Fed.R.Evid. 404(b). The admissibility of other act evidence depends on whether (1) the other act evidence tends to prove a material point; (2) the other act evidence is not too remote in time; and (3) the evidence shows that the defendant committed the other act. Bibo-Rodriguez, 922 F.2d at 1400. In addition, if the government introduces the other act to prove the defendant's knowledge, the other act must be similar to the offense conduct. Id. Even other act evidence that meets this test may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Id. at 1401.
 
 
 14
 Evidence of another act is admissible whether it preceded or followed the offense. Id. at 1400. When the evidence concerning the act is inextricably intertwined with the evidence used to prove the crime charged, however, the evidence should not be treated as "other" acts evidence but as direct evidence of the crime charged. United States v. Mundi, 892 F.2d 817, 820 (9th Cir.1989), cert. denied, 498 U.S. 1119 (1991).
 
 
 15
 We conclude that the district court did not err by admitting the G & G Produce checks over Beltran's objection. That Beltran assisted the deposit of stolen checks two weeks after participating in a similar arrangement tends to establish his knowledge and intent to defraud. See Bibo-Rodriguez, 922 F.2d at 1401-02. As we stated in Bibo-Rodriguez, "the subsequent offense is relevant to show that the defendant could not have been duped in the first instance, because he repeated a similar, although not identical action on a subsequent occasion." Id. at 1402. By arranging for Macko to retain one-quarter of the proceeds of the three G & G Produce checks, Beltran substantially undermined his assertion that he did not know the checks were stolen. The incidents were related because Shafer had sent these checks in the same package as the Foundation Health check. The probative value of the evidence, therefore, outweighed the risk of unfair prejudice.
 
 
 16
 Beltran also preserved his Rule 404(b) objection to the introduction of evidence establishing that he had had a corporate bank account in the past but the bank had closed the account. The district court had twice sustained objections to this evidence, but admitted it as proper impeachment during the cross-examination of a defense witness.
 
 
 17
 The defense called Christenson to show that Beltran's golf course dream was real. On cross-examination, the prosecutor effectively impeached Christenson's knowledge of Beltran's business activities, including his ignorance of the closed bank account. Thus, the evidence was relevant to the jury's evaluation of Christenson's testimony regarding the legitimacy of the planned golf course, and thereby undermined Beltran's defense. See United States v. Ruster, 712 F.2d 409, 411-12 (9th Cir.1983); see also United States v. Panza, 612 F.2d 432, 436-37 (9th Cir.1979) (trial court has broad discretion to determine the bounds of relevant cross-examination), cert. denied, 447 U.S. 925 (1980). In addition, the evidence was relevant to show that Beltran had lied to Macko about the reason he needed Macko's assistance to cash third-party checks. See United States v. Ramirez-Jiminez, 967 F.2d 1321, 1327-28 (9th Cir.1992) (evidence of defendant's lie on collateral issue was probative of his consciousness that his conduct was illegal).
 
 
 18
 Beltran did not object at trial to the introduction of the three checks which Macko unsuccessfully attempted to cash on the day of the offense. We discern no miscarriage of justice in the introduction of these checks, which had been written on Shafer's corporate account to investor Cheung. The attempt to deposit these checks was inextricably intertwined with the offense since it occurred on the same day, involved the same parties, and concerned transactions surrounding the offense conduct. See id. at 1327 (evidence that is inextricably intertwined with the offense is admissible to "flesh out the circumstances surrounding the crime with which the defendant has been charged, thereby allowing the jury to make sense of the testimony in its proper context"); Mundi, 892 F.2d at 820.
 
 
 19
 Beltran also failed to object to the introduction of the check which Beltran gave to Macko to buy his car. This check had been written by Cheung as an investment in Beltran's golf course. The introduction of this check did not amount to plain error because it assisted the jury to understand Beltran's relationship to Macko, who Beltran enlisted to attempt to cash the Foundation Health check.
 
 III
 Sufficiency of the Evidence
 
 20
 Beltran contends that the evidence was insufficient to establish that he knew the Foundation Health check was stolen. In light of Beltran's participation in the attempts to cash several stolen checks, the structure of the transactions, and the lies he told in the process, we conclude that a reasonable jury could have found Beltran knowingly committed the crimes charged. See Ramirez-Jiminez, 967 F.2d at 1328 (when sole jury issue was defendant's knowledge, evidence that defendant participated in another similar criminal scheme and lied to arresting officers was sufficient to convict).
 
 
 21
 AFFIRMED.
 
 
 
 *The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4.
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3