UNITED STATES of America,
Plaintiff-Appellee,

v.

Charles Richard MORSE,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Curtis Robert RICHMOND,
Defendant-Appellant.

Nos. 84–5214, 84–5215.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 8, 1985.
Decided March 25, 1986.

will be doing considerable time."

Lantz Lewis, Sp. Asst. U.S. Atty., argued, Peter K. Nunez, U.S. Atty., Lantz Lewis, Sp. Asst. U.S. Atty., on the brief, San Diego, Cal., for plaintiff-appellee.

George C. Boisseau, San Diego, Cal., Albert A. Newton, Michael T. Kenney, Santa Ana, Cal., for defendants-appellants.

Before ANDERSON, BEEZER, and BRUNETTI, Circuit Judges.

BRUNETTI, Circuit Judge:

Appellants, Charles Richard Morse and Curtis Robert Richmond, appeal their convictions on various counts of mail fraud, 18 U.S.C. § 1341, and securities fraud, 15 U.S.C. § 77q(a). The convictions resulted from appellants' involvement in a mail fraud scheme comprised of four tax shelter/investment programs promoted from late 1978 through 1981. Appellants claim that the indictment was duplicitous and that the district court erred in failing to dismiss on that ground. Alternatively, they claim that a fatal variance occurred between the allegations in the indictment and the proof at trial. Appellant Richmond contends that the government failed to make a required showing that any of the investments offered by appellants were securities under 15 U.S.C. § 77b(1). Finally, Richmond brings a challenge to the district court's jury instructions.

We affirm.

## I. FACTS AND PROCEEDINGS

During the late 1970s appellant Richmond, operating as C.R. Richmond & Co., promoted tax shelter/investments in oil and gas drilling through two limited partnerships, Red River Partners and Buckeye Partners. The oil and gas drilling partnerships were beset by failures to produce and misappropriation of funds, with the result that most investors received no return on their investment.

Sometime in 1977 or 1978, Richmond met appellant Morse and discussed commencing a tax shelter/investment program placing video games in arcades. Morse was then operating through a company known as Teesan Corporation, which he had purchased for $300, and in which Richmond later acquired a 20% interest. Thereafter, Richmond and Morse began jointly promoting investments in "Aura" video games. Funds from the gas drilling venture were used to finance the new program. The video game venture soon failed, however, due in part to faulty equipment which failed to attract players. All records of the video game locations were later destroyed in a fire.

Following the collapse of the video game venture, Teesan Corporation offered, and Richmond actively promoted, a tax shelter/investment program leasing heavy equipment to oil field operators. Video investors were encouraged to "roll over" into the new venture. Some of the heavy

equipment investors were solicited from Buckeye Partners, and money from the partnership was funneled into Teesan accounts. In fact, no heavy equipment was ever purchased. The leasing program failed and Teesan closed its doors.

Thereafter, Richmond began soliciting investors for a "secondary oil recovery" project which contemplated reactivating old proven oil wells. The secondary oil project produced no oil before all investor funds were exhausted. The guarantee accompanying the investments, however, provided that it was effective only if oil was produced.

A federal grand jury returned a criminal indictment charging appellants with counts of mail and securities fraud. The case was tried to a jury which returned a guilty verdict against both defendants. Morse was sentenced to four years in custody and five years probation. Richmond was sentenced to seven years in custody.

## II. DISCUSSION

### A. *Duplicitous Indictment*

■ Appellants contend that the indictment is duplicitous and should have been dismissed on that ground. Appellant Morse contends that the portions of the indictment that describe the scheme to defraud in fact describe two or more schemes to defraud and, therefore, each count in the indictment charges more than a single crime. A duplicitous indictment precludes assurance of jury unanimity, and may prejudice a subsequent double jeopardy defense. *United States v. UCO Oil Co.*, 546 F.2d 833, 835 (9th Cir.1976), *cert. denied*, 430 U.S. 966, 97 S.Ct. 1646, 52 L.Ed.2d 357 (1977).

■ In reviewing an indictment for duplicity, we look to the indictment itself to determine whether it may fairly be read to charge but one crime in each count. *United States v. Mastelotto*, 717 F.2d 1238, 1244 (9th Cir.1983).

Paragraph 7 of the indictment, entitled "Scheme", alleges that appellants "knowingly and willfully devised and intended to devise a scheme and artifice to defraud" and that "[a]s part of said scheme and artifice to defraud, and in furtherance thereof [appellants] would and did engage in the following activities and conduct...." The indictment goes on to enumerate the activities of appellants in the oil and gas drilling projects, and video, heavy equipment, and secondary oil recovery programs.

■ To find this indictment duplicitous, we would have to conclude that, as a matter of law, a description of the four investment programs necessarily embraces more than a single scheme. The law of this circuit, however, takes a broad view of single scheme: "the defrauding of different people over an extended period of time, using different means and representations, may constitute but one scheme." *Mastelotto*, 717 F.2d at 1245 (quoting *Owens v. United States*, 221 F.2d 351, 354 (5th Cir. 1955)). Under this standard, the indictment may fairly be read to charge but a single scheme and is therefore not duplicitous.

### B. *Variance*

Appellants' next contention is that the evidence produced at trial established the existence of more than one scheme to defraud, giving rise to a fatal variance between the pleading and proof.

■ The initial inquiry here is whether the evidence concerning the fraudulent transactions was sufficient to permit the question of the existence of a single fraudulent scheme to go to the jury. *Mastelotto*, 717 F.2d at 1246. The evidence, however, need not exclude every hypothesis but that of a single scheme. *Id.* To disturb the jury's finding in the instant case, we would have to conclude, after viewing the evidence in the light most favorable to the prosecution, that *no* rational trier of fact could have found a single scheme to defraud. *Id.* at 1246–1247.

■ In assessing whether the evidence supports the jury's finding of a single scheme, we may consider the following

factors: 1) the nature of the scheme; 2) the identity of the participants; 3) the quality, frequency and duration of each conspirator's transactions; and 4) the commonality of time and goals. *Id.* at 1245. To the extent that these factors restrict the scope of a scheme to defraud, however, the panel need accord them only limited importance. *Id.*

The ventures comprising the scheme were of a similar nature in that all four were promoted as income producing tax shelters.

The participation of appellants was as follows: Richmond was directly involved in all four ventures; Morse participated only in the video game and heavy equipment ventures. The fact that Morse was not an original participant in the scheme and withdrew before its termination does not, however, refute the notion of a single scheme. *See Reuben v. United States*, 86 F.2d 464, 469 (7th Cir.1936), *cert. denied*, 300 U.S. 671, 57 S.Ct. 513, 81 L.Ed. 877 (1937).

The quality, frequency and duration of appellants' transactions were as follows: Richmond actively promoted and helped devise all four ventures; Morse, as President and Chairman of the Board of Teesan Corporation developed and directed the video game and heavy equipment ventures.

Finally, as regards commonality of time and goals, the four ventures were operated in sequence, with some overlap, for the profit of appellants. Evidence at trial indicated that funds raised for gas drilling were used to keep the video game venture afloat. The heavy equipment leasing venture drew investors from the collapsed video game program. Likewise, testimony indicated that the secondary oil recovery project was promoted as a means to recoup investor losses in the heavy equipment venture.

■ On the basis of the evidence presented at trial, and under the expansive standard for a single scheme, we conclude that a rational trier of fact *could* find the four ventures constituted a single scheme.

Accordingly, we find no variance between the indictment and the proof at trial.

■ Assuming that a variance had occurred, however, appellants have failed to show that their substantial rights were prejudiced. *See United States v. Kenny*, 645 F.2d 1323, 1334 (9th Cir.) (reversal for variance required only if prejudicial to substantial rights of parties), *cert. denied*, 452 U.S. 920, 101 S.Ct. 3059, 69 L.Ed.2d 425 (1981). Such prejudice may result in three ways: 1) inadequate opportunity to prepare a defense and exposure to unanticipated evidence at trial, *Berger v. United States*, 295 U.S. 78, 83, 55 S.Ct. 629, 631, 79 L.Ed. 1314 (1935); 2) deprivation of the right to be tried only on charges presented in an indictment returned by a grand jury, *Stirone v. United States*, 361 U.S. 212, 218–19, 80 S.Ct. 270, 273–74, 4 L.Ed.2d 252 (1960); and 3) exposure to prejudicial evidentiary spillover, *Kotteakos v. United States*, 328 U.S. 750, 774, 66 S.Ct. 1239, 1252, 90 L.Ed. 1557 (1946).

The appellants had ample opportunity to prepare their defense and had adequate notice of the intended proof. The proof at trial did not broaden or go beyond the allegations in the indictment, so no deprivation of appellants' grand jury right occurred.

Finally the risk of evidentiary spillover is slight. Appellants' involvements in the four investment projects were clearly detailed in the indictment. The situation is thus inapposite to *Kotteakos* where evidentiary spillover resulted from jury trial of thirteen defendants for involvement in more than eight conspiracies. *Kotteakos*, 328 U.S. at 753, 773, 66 S.Ct. at 1242, 1252.

## C. Investments as Securities

Appellant Richmond contends that the government failed to establish that any of the investments offered by appellants were securities under 15 U.S.C. § 77b and that therefore none of the securities-related convictions can stand.

■ In a criminal prosecution, the question whether a given investment opportuni-

ty constitutes a security is ordinarily a question for the jury, following instructions by the court on the applicable law. *United States v. Carman,* 577 F.2d 556, 562–63 (9th Cir.1978).

In the instant case, the district court determined as a matter of law that the investment opportunities were "securities" under 15 U.S.C. § 77b(1), and so instructed the jury. Richmond did not at the time object to the court's determination, and does not argue on appeal that the court applied an incorrect legal standard for defining securities, or that the court invaded the province of the jury in making the determination. Therefore, we decide only whether sufficient evidence existed to support the district court's conclusion that the investments were securities.

The district court used a three-part test set forth in *S.E.C. v. W.J. Howey Co.,* 328 U.S. 293, 298–99, 66 S.Ct. 1100, 1102–03, 90 L.Ed. 1244 (1946). Under the *Howey* test, a security requires 1) an investment of money, 2) in a common enterprise, and 3) the expectation of profits to be derived solely from the efforts of others. *Id.*

Richmond contends that profits from the gas drilling and oil recovery ventures were not shown to be expected solely through the efforts of others because the investors had not relinquished all authority. Richmond further contends that, with respect to the video games and heavy equipment leasing, there was no showing that a common enterprise existed.

These contentions are without merit. This circuit has rejected a narrow construction of the phrase "solely through the efforts of others," finding the test to have been met when "the efforts made by those other than the investor are the undeniably significant ones." *S.E.C. v. Glenn W. Turner Enterprises, Inc.,* 474 F.2d 476, 482 (9th Cir.), *cert. denied,* 414 U.S. 821, 94 S.Ct. 117, 38 L.Ed.2d 53 (1973). In the gas drilling venture the general partner had sole control, and investors in the secondary oil recovery venture relied entirely on the efforts of the driller, Dusty Rhoades.

The requirement of a common enterprise is met when the fortunes of the investor are dependent upon the efforts and success of the party seeking the investment. *Glenn W. Turner Enterprises, Inc.,* 474 F.2d at 482 n. 7. Investors in the video games and heavy equipment relied upon the efforts of Teesan Corporation to obtain financing for the games and equipment and to lease the equipment to produce revenue. The common enterprise requirement clearly was met. There was sufficient evidence to support the district court's determination that the investments were securities under 15 U.S.C. § 77b(1).

### D. *Jury Instructions*

Appellant Richmond contends that the district court did not adequately instruct the jury that, in order to return a guilty verdict, they had to agree unanimously on the identity or extent of the alleged scheme to defraud. Richmond contends that, as a result, the jurors may have arrived at divergent conclusions concerning the nature or extent of the scheme, thus violating appellant's sixth amendment guarantees to a unanimous jury verdict. *See United States v. Echeverry,* 698 F.2d 375, 377 (9th Cir.), *modified,* 719 F.2d 974 (9th Cir.1983).

When reviewing a claim of error relating to jury instructions, we view the instructions as a whole. *United States v. Abushi,* 682 F.2d 1289, 1299 (9th Cir. 1982). The trial judge's choice of language justifies reversal only for an abuse of discretion. *United States v. Park,* 421 U.S. 658, 675, 95 S.Ct. 1903, 1913, 44 L.Ed.2d 489 (1975).

In a mail fraud case in which a defendant contends that a variance has occurred between the single scheme charged in each count of the indictment and the proof at trial, the jury must be instructed that, to return a guilty verdict, each of the jurors must find the defendant guilty of

participation in the same single scheme to defraud alleged in the indictment. *Mastelotto*, 717 F.2d at 1247. Two recent decisions of this court have reversed convictions where jury instructions failed to articulate the need for jury unanimity regarding the particular charged fraud or conspiracy. *Id.* at 1243 n. 3, 1249–50 (mail fraud convictions overturned where jury instructions affirmatively stated that jurors could find either a "scheme or schemes", and did not expressly require a finding of the charged scheme); *Echeverry*, 698 F.2d at 376–77 (conspiracy conviction overturned where jury instructions permitted portions of the jury to find different conspiracies).

The district court in the instant case gave the following instructions:

> Now, in the Indictment it is asserted that the different defendants employed a single scheme to defraud purchasers. To show participation in that scheme, the Government must prove beyond a reasonable doubt that a defendant or defendants was a party to the same scheme alleged in the Indictment. It is not sufficient if the Government proves that a defendant was a party to a scheme which was separate and distinct from that alleged in the Indictment.
>
> In your consideration of the evidence in the case to the offense of scheme or artifice to defraud charged, you should first determine whether or not the scheme existed as alleged in the Indictment.
>
> Your verdict, whether guilty or not guilty, must be unanimous.

Taken together these jury instructions make clear that a conviction required a unanimous finding that appellants participated in the same single scheme alleged in the indictment. *See United States v. Wellington*, 754 F.2d 1457, 1463 (9th Cir.1985), *cert. denied,* — U.S. ——, 106 S.Ct. 592 & 593, 88 L.Ed.2d 573 (1985); *Echeverry*, 719 F.2d at 974.

Appellants' convictions are AFFIRMED.