985 F.2d 575
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee, Cross-Appellant,
v.
Brett Alan BRINTON, Defendant-Appellant, Cross-Appellee,
UNITED STATES of America, Plaintiff-Appellee, Cross-Appellant,
v.
William John BRINTON, Defendant-Appellant, Cross-Appellee.
 No. 90-50488, 90-50489, 91-50043 and 91-50045.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 18, 1992.
Decided Jan. 21, 1993.
 
 Appeal from the United States District Court for the Central District of California, No. CR-89-0759-TJH-2, No. CR-89-0759-TJH-1; Terry J. Hatter, District Judge, Presiding.
 C.D.Cal.
 AFFIRMED IN PART, VACATED IN PART AND REMANDED.
 Before WIGGINS, KOZINSKI KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 OVERVIEW
 
 2
 William and Brett Brinton appeal their convictions for violations of 21 U.S.C. §§ 841(a)(1), 844, 846, & 858. Brett Brinton also appeals his separate convictions for violations of 21 U.S.C. §§ 841(a)(1) and 841(d). The government appeals the district court's departure from the Sentencing Guidelines.
 
 
 3
 The Brintons raise several issues on appeal, each of which will be treated separately. While the Brintons contend that the district court erred at nearly every turn throughout the course of the trial, after thorough review, we are convinced that the district court's only error was its complete disregard of the Sentencing Guidelines. Therefore, we affirm the convictions, vacate the sentences, and remand for resentencing.
 
 FACTS
 
 4
 On March 6, 1989, an explosion occurred at an industrial complex located at 251 S. Mountain View in San Bernadino, California. At the time of the explosion, an eyewitness observed two white males wearing shorts and t-shirts dragging objects that were later revealed to contain methamphetamine from the exploded unit. The eyewitness also saw one of the individuals walk to a fence and throw a glass beaker over it. The police and fire department responded to the explosion. Officer Ken Boardman spoke to the eyewitness and recovered the glass beaker, detecting a brown substance on it and an odor consistent with methamphetamine. The officer then observed the Brintons, both wearing shorts, leave the exploded unit. The Brintons were detained and a search warrant obtained to search the exploded unit. The search revealed that the explosion had originated in a clandestine drug laboratory and exposed several signed documents connecting the Brintons to the laboratory and its operation. Having indicated that they were co-owners of the exploded business, the Brintons were arrested in conjunction with the incident.
 
 
 5
 Based upon Detective Memmott's observations of the laboratory, the Brintons' statements as to their home address, prior knowledge of the Brintons' involvement in narcotics, and the expert opinion of Detective Memmott, the government obtained a warrant to search 3276 Miramonte Street in San Bernadino. During the course of this search, officers discovered 43 grams of methamphetamine, an explosive device, and a videotape with footage of the Brintons manufacturing a substance that appeared to be methamphetamine. The Brintons' mother also advised officers that William Brinton did not live at that location but at 3125 Cactus Circle with his girlfriend.
 
 
 6
 The police obtained a search warrant for the Cactus Circle residence and in a subsequent search discovered a jar of liquid containing methamphetamine, $1,000 cash, and various explosive devices and chemicals. The government also obtained search warrants for storage sheds rented by the Brintons. Searches of the sheds uncovered 1,300 pounds of ephedrine, a chemical often used in the manufacture of methamphetamine, and glassware used in the manufacture of methamphetamine.
 
 
 7
 Some months later, a grand jury returned an eight count indictment that charged the Brintons with conspiracy to manufacture methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1); endangering human life while manufacturing methamphetamine in violation of 21 U.S.C. § 858; manufacture of methamphetamine in violation of 21 U.S.C. § 841(a)(1); possession of methamphetamine with the intent to distribute in violation of 21 U.S.C. § 841(a)(1); manufacture of an explosive without license in violation of 18 U.S.C. § 842; and possession of ephedrine with the intent to manufacture methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(d).
 
 
 8
 In August of 1990, a jury convicted the Brintons of conspiracy to manufacture methamphetamine, endangering human life while illegally manufacturing methamphetamine, manufacturing methamphetamine, and possession of methamphetamine with the intent to distribute. The jury also convicted Brett Brinton of possession of ephedrine with the intent to manufacture methamphetamine and of the lesser included offense of simple possession of 43 grams of methamphetamine.
 
 DISCUSSION
 I.
 
 9
 The Brintons contend that the district court erred in denying them a Franks hearing. We disagree after considering the question de novo. United States v. Perdomo, 800 F.2d 916, 920 (9th Cir.1986).
 
 
 10
 Not every challenge to an affidavit supporting the issuance of a search warrant requires a Franks hearing. A defendant must make allegations of deliberate falsehood accompanied by an offer of proof and must also show that the remaining content of the affidavit is insufficient to establish probable cause. Franks v. Delaware, 438 U.S. 154, 171 (1978). Here, the defendants have failed on both accounts.
 
 
 11
 First, the Brintons can point to no deliberate falsehood in the affidavits. They contend that the affiants did not know them, but the affiants never claimed that they knew the Brintons, only that they knew of them from their work as narcotics officers. Moreover, it is clear to us that the remaining content in the affidavits was sufficient to establish probable cause to search both residences and the storage shed.
 
 
 12
 It is undisputed that "[d]irect evidence that contraband or evidence is at a particular location is not essential to establish probable cause to search the location." United States v. Angulo-Lopez, 791 F.2d 1394, 1399 (9th Cir.1986). Rather, the court "is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense. In the case of drug dealers, evidence is likely to be found where the dealers live." Id. (citations omitted). Furthermore, this court has "repeatedly found the opinions of experienced law enforcement agents highly important in making probable cause determinations." United States v. Seybold, 726 F.2d 502, 504 (9th Cir.1984). Taken together these cases lead to the obvious conclusion that the police had probable cause to search the residences of both Brinton brothers as well as their storage sheds. We hold that the district court did not err in denying the Brintons a Franks hearing.
 
 II.
 
 13
 The Brintons also contend that their Miranda rights were violated when they were asked about, and divulged, their home addresses before receiving Miranda warnings. They argue that the questions about their home addresses constituted custodial interrogation and that their statements relating to their addresses and all evidence gathered thereby should have been suppressed. "Whether questioning constitutes interrogation presents a mixed question of law and fact which we review de novo, when as here, there is no factual dispute as to what questions were asked, whether Miranda warnings were given, or what answers were given." United States v. Disla, 805 F.2d 1340, 1347 (9th Cir.1986).
 
 
 14
 "[C]ustodial questioning constitutes interrogation whenever, under all the circumstances involved in a given case, the questions are 'reasonably likely to elicit an incriminating response from the suspect.' " United States v. Booth, 669 F.2d 1231, 1237 (9th Cir.1981) (quoting Rhode Island v. Innis, 446 U.S. 291, 301 (1980)). This court has held that "[o]rdinarily, the routine gathering of background biographical data will not constitute interrogation." Id. at 1238. However, this court has also held that when police officers know that large quantities of drugs are contained within a residence, asking the suspect his address constitutes interrogation. Disla, 805 F.2d at 1347. Here, it is not clear that officers knew what, if anything, they would find at the Brintons' residence. Therefore, we hesitate to conclude that the questions asked constituted custodial interrogation in this case.
 
 
 15
 Fortunately, we need not decide that question because even if the questions constituted interrogation the Brintons could not exclude the "fruits" of that interrogation on Miranda grounds. The questions asked the Brintons were used only to establish probable cause for the search warrant affidavits. While "[s]tatements taken in violation of Miranda may not be used to prove the prosecution's case at trial[,] [s]uch evidence may ... be used for other purposes, provided that its trustworthiness satisfies legal standards." United States v. Lemon, 550 F.2d 467, 473 (9th Cir.1977); accord United States v. Patterson, 812 F.2d 1188, 1193 (9th Cir.1987), cert. denied, 485 U.S. 922 (1988). Here, the statements weren't admitted at trial as incriminating evidence. Rather, they were used only to establish probable cause. The physical evidence was therefore recovered pursuant to valid search warrants, even if the questions constituted interrogation.
 
 III.
 
 16
 The Brintons also contend that the search warrants for their homes and storage shed were defective because they lacked probable cause. We have addressed this contention above and are still convinced that there was probable cause to support the warrant in each instance. As a reviewing court, we give deference to the magistrate's determination of probable cause and preference to the validity of the warrant in close cases. United States v. Hernandez, 937 F.2d 1490, 1494 (9th Cir.1991); see also United States v. Schmidt, 947 F.2d 362, 371 (9th Cir.1991) (magistrate's determination of probable cause will not be reversed absent a finding of clear error).
 
 
 17
 The district court's finding that the search warrants were supported by probable cause is sustained by two important facts. First, the explosion of the Brintons' methamphetamine laboratory, and second, the detective's expert opinion that drug manufacturers often keep drugs, paraphernalia, and financial proceeds and records in their places of residence. The district court's conclusion is consistent with the previously cited decisions of this court holding that "the opinions of law enforcement agents [are] highly important in making probable cause determinations," Seybold, 726 F.2d at 504, and that "[i]n the case of drug dealers, evidence is likely to be found where the dealers live." Angulo-Lopez, 791 F.2d at 1399. The law in this circuit and the facts of this case compel our conclusion that the warrants were supported by probable cause.
 
 IV.
 
 18
 By far the most persistent and least persuasive argument advanced by the Brintons is the contention that error was committed when the Brintons were charged with and convicted of the manufacture, manufacture with the intent to distribute, possession, and possession with the intent to distribute methamphetamine and ephedrine and not methamphetamine hydrochloride and ephedrine hydrochloride.[1] It is undisputed that at trial the evidence proved that the charged substances contained methamphetamine hydrochloride and ephedrine hydrochloride and not methamphetamine and ephedrine. It is little wonder that the government chooses not to dispute these chemical distinctions; after all, they are of no legal significance.
 
 
 19
 The Brintons were indicted for violating 21 U.S.C. § 841(a), which makes it "unlawful for any person knowingly or intentionally to manufacture, distribute, or dispense, or possess with intent to manufacture distribute, or dispense, a controlled substance...." The indictment specified that the controlled substances the Brintons were suspected of having possessed were methamphetamine and ephedrine. As already indicated, the evidence at trial proved that the substances that the Brintons actually manufactured and possessed were methamphetamine hydrochloride and ephedrine hydrochloride. The Brintons claim that this difference constitutes a factual variance between the indictment and the proof at trial. We disagree.
 
 
 20
 When a defendant alleges a factual variance between the indictment and the proof at trial, we must determine whether the defendant was prejudiced or surprised, and whether his substantial rights were affected. See United States v. Morse, 785 F.2d 771, 775 (9th Cir.) (reversal of conviction for variance required only if the substantial rights of the defendant were prejudiced), cert denied, 476 U.S. 1186, and cert. denied 479 U.S. 861 (1986); United States v. Tarantino, 846 F.2d 1384, 1391 (D.C.Cir.1988) ("A variance between the allegations of the indictment and the proof at trial constitutes grounds for reversal only if the appellant proves (1) that the evidence at trial established facts materially variant from those alleged in the indictment, and (2) that the variance caused substantial prejudice."), cert. denied, 488 U.S. 840, and cert. denied, 488 U.S. 867 (1988).
 
 
 21
 We are not convinced that there was any variance, much less a material one, between the indictment and the evidence and proof at trial. Furthermore, it is clear that the Brintons suffered no prejudice to any substantial right. The Brintons explain at length the chemical difference between methamphetamine and methamphetamine hydrochloride and ephedrine and ephedrine hydrochloride. They fail to recognize, however, that the legal definitions of methamphetamine and ephedrine differ from their chemical definitions and include the salts, isomers, and salts of the isomers of each. 21 U.S.C. § 821(b)(1)(A)(viii) (1988). Because both hydrochlorides are salts of the substances, they are included in the legal definition of methamphetamine and ephedrine.
 
 
 22
 Even assuming that there was some variance between the indictment and the evidence and proof at trial, the Brintons have failed to show how they were prejudiced and their substantial rights affected. The only possible prejudice to which the Brintons can point, the decision to defend against the charges and the refusal to plea bargain because of the scientific difference between methamphetamine, ephedrine and their hydrochlorides, was of their own creation. We will not permit defendants to bury their heads in legal sand and then claim prejudice. We find that the Brintons were neither prejudiced nor their substantial rights affected in any way.
 
 V.
 
 23
 The Brintons also contend that the district court erred in instructing the jury. The Brintons challenge the legal sufficiency of the instructions. "Whether a jury instruction misstates elements of a statutory crime is a question of law we review de novo." United States v. Johnson, 956 F.2d 197, 199 (9th Cir.1992).
 
 
 24
 All of the challenged instructions stated the law accurately and clearly. The district judge instructed the jurors that in order to convict under § 841(a) on counts three and four they had to find that the Brintons knew that they were manufacturing and possessing with the intent to distribute a controlled substance. See, e.g. United States v. Ramirez-Ramirez, 875 F.2d 772, 774-75 (9th Cir.1989) (knowledge of precise controlled substance in defendant's possession not relevant; defendant need only be aware he has a controlled substance in his possession). For the same reason, the instruction on the lesser included possession offense stated the legal issues accurately and did not have to be withdrawn at the Brintons' request.
 
 VI.
 
 25
 Finally, we reach the government's challenge of the Brintons' sentences. The government argues that the district court erred by "discarding" the Sentencing Guidelines in sentencing each of the Brinton brothers. We agree. It seems obvious that a district court may not disregard completely the Sentencing Guidelines when sentencing criminals. See United States v. Brady, 895 F.2d 538 (9th Cir.1990).
 
 
 26
 We review any downward departures from the Sentencing Guidelines under the three prong Lira-Barraza test. First, we determine whether the district court identified adequately any aggravating or mitigating circumstance that was not considered by the Sentencing Commission and that would authorize a departure. United States v. Lira-Barraza, 941 F.2d 745, 746 (9th Cir.1991) (en banc ). Second, we review for clear error the factual findings supporting the existence of the identified circumstance. Id. Third, we determine whether the departure was reasonable. Id. at 747.
 
 
 27
 A sentencing court has an undeniable duty to state clearly the reasons for any departure from the Sentencing Guidelines. Unfortunately, we find that the district court has abrogated this clear duty in this case. The district court has not satisfied the first prong of the Lira-Barazza test; it has not identified any mitigating circumstance that was not considered by the Sentencing Commission that would justify such a drastic departure. Therefore, we vacate the sentences and remand this case to the district court for resentencing. We remind the district court that the Sentencing Guidelines are mandatory and may not be disregarded. See United States v. Davern, 970 F.2d 1490, 1492 (6th Cir.1992) (finding that the Guidelines are a sentencing imperative). Any departure from a sentence compelled by the Sentencing Guidelines must be clearly justified by a good and substantial reason.
 
 
 28
 AFFIRMED IN PART, VACATED IN PART AND REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 We recognize that only Brett Brinton was convicted on counts seven and eight, which involved the ephedrine