29 F.3d 634
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Nazareth ANDONIAN, Vahe Andonian, Ruben Saini, Raul Vivas,
and Juan Carlos Seresi, Defendants-Appellants.
 Nos. 91-50622 thru 91-50626.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 1, 1993.
Submission Deferred Dec. 23, 1993.
Resubmitted Feb. 9, 1994.
Decided July 19, 1994.
 
 Before: BROWNING, BEEZER, and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 The defendants appeal their jury convictions and sentences for conspiracy to commit money laundering and for money laundering in violation of 18 U.S.C. Secs. 371 and 1956(a)(1)(A)(i) and (B)(i). The government alleged the defendants organized and operated a vast and elaborate money laundering network, known by its participants as "La Mina," which laundered cash drug proceeds by purchasing, trading, and selling gold and then wire-transferring the funds out of the country. Over a three-year period, approximately $316 million were funneled to banks in Central and South America.
 
 
 3
 Raul Vivas, Juan Carlos Seresi, Ruben Saini, and Vahe and Nazareth Andonian were convicted on Count 2, which alleged conspiracy to launder money. Vivas, Seresi, and the Andonians were also convicted of individual acts of money laundering alleged in Counts 3-27. Ruben Saini was convicted of individual acts of money laundering alleged in Counts 6-27 and acquitted of money laundering alleged in Counts 3-5. None of the defendants were convicted on Count 1, which alleged conspiracy to aid and abet the possession and distribution of cocaine, in violation of 21 U.S.C. Secs. 841, 846 and 18 U.S.C. Sec. 2.
 
 
 4
 Vivas, Seresi, and the Andonians were each sentenced to 505 years in prison. Saini was sentenced to 27 years in prison.
 
 
 5
 The defendants appeal their convictions and sentences. They assign various errors to pretrial and trial proceedings and to their sentences. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291. We affirm the convictions.[1] We affirm the sentences of Vivas and the Andonians. We remand for reconsideration and further findings as to the sentences of Seresi and Saini.
 
 
 6
 * The money laundering scheme involved in this case is complex. We do not attempt here to summarize the picture which unfolded in eight months of testimony. Because the details are familiar to the parties, we need not here summarize the facts.
 
 II
 
 7
 Defendants Seresi and Saini contend that they were denied their rights under the Speedy Trial Act, 18 U.S.C. Sec. 3161. The Act requires that trial begin within 70 days of the filing of the indictment, unless there is excludable delay under 18 U.S.C. Sec. 3161(h). Seresi and Saini argue that the periods of delay from January 23, 1990 to March 20, 1990, and from March 20, 1990 to April 17, 1990 were not excludable. They also contend that the government did not exercise due diligence in preparing for trial.
 
 
 8
 We review the district court's factual findings for clear error and its conclusions of law de novo. United States v. Butz, 982 F.2d 1378, 1380 (9th Cir.), cert. denied, 114 S.Ct. 250 (1993). Defendant's contentions have no merit.
 
 
 9
 The district court found excludable delay based on the "ends of justice" until March 20, 1990. As Vivas had been arraigned only days earlier, the district court found that he was entitled to adequate time to prepare for trial. The district court ordered a further continuance on March 1, 1990, setting trial for April 17, finding the delay excludable both to preserve continuity of counsel for the government and to provide Vivas with additional time to prepare for trial by investigating certain potential witnesses who were in South America.
 
 
 10
 The district court's findings were not clearly erroneous. Although the prosecutor's estimate of the time needed for another case were overly optimistic, we cannot say the district court clearly erred in determining that the government had acted with due diligence and was entitled to continuity of counsel. See 18 U.S.C. Sec. 3161(h)(8)(B)(iv).
 
 
 11
 Further, Seresi and Saini cannot complain that the continuances were not excludable to the extent they were granted to allow Vivas to prepare for trial. A continuance granted to one non-severed defendant applies to all. Butz, 982 F.2d at 1381. Vivas was entitled to a fair opportunity to prepare for trial. United States v. Calabrese, 825 F.2d 1342, 1347 (9th Cir.1987).
 
 III
 
 12
 Vivas, Seresi, and Saini argue that the district court erred in admitting evidence of other acts under Fed.R.Evid. 404(b). They argue that the district court failed to analyze whether the prior conduct was admitted to prove a material fact, that the government failed to enunciate a specific purpose for admitting the evidence, that the district court failed to weigh the probative value against the prejudicial effect of the evidence, and that the district court failed to properly instruct the jury concerning the evidence.
 
 
 13
 The challenged evidence concerns Vivas', Seresi's, and Saini's relationship with Wanis Koyomejian and the Ropex company. It demonstrated that the money laundering methods employed prior to 1987 by Vivas, Seresi, and Saini were similar to the methods employed after the arrangement with the Andonians was established.
 
 
 14
 Whether the challenged evidence is "other crimes" or prior similar act evidence under Rule 404(b) is a question of law we review de novo. United States v. Hill, 953 F.2d 452, 455 (9th Cir.1991). We reverse a district court's admission of evidence under Rule 404(b) only for clear abuse of discretion. United States v. Miller, 874 F.2d 1255, 1268 (9th Cir.1989).
 
 
 15
 * Rule 404(b) permits introduction of evidence to prove a person's "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." We have consistently held that "the rule is one of inclusion and that other acts evidence is admissible whenever relevant to an issue other than the defendant's criminal propensity." United States v. Mehrmanesh, 689 F.2d 822, 830 (9th Cir.1982).
 
 
 16
 Defendants argue that the district court failed to analyze whether the other acts evidence was introduced to prove a material element of the charged offense. See United States v. Arambula-Ruiz, 987 F.2d 599, 602 (9th Cir.1993). The government may not use evidence of other wrongs unless it establishes that "the evidence is probative of a material issue in the case, and that sufficient evidence exists for the jury to find that the defendant committed the other acts." United States v. Ramirez-Jimenez, 967 F.2d 1321, 1325 (9th Cir.1992).
 
 
 17
 Evidence of prior related activities is admissible under Rule 404(b) "so long as the acts tended to make the existence of [the defendant's] knowledge or intent more probable than it would be without the evidence." United States v. Jones, No. 90-10501, slip op. at 3335 (9th Cir. April 6, 1993).[2] In Jones, we held that evidence that the defendant was involved in an earlier drug importation operation was relevant to establishing his involvement in the charged conspiracy: "[I]n light of the similarity in the modus operandi ... the testimony was relevant as tending to show that appellant had the requisite knowledge and intent to commit the crimes with which he was charged." Id. at 3336.
 
 
 18
 The same logic applies here. The modus operandi of the alleged money laundering scheme was identical to that of the scheme established by the Rule 404(b) evidence involving Vivas, Seresi, and Saini and the Ropex company. The evidence tends to show both knowledge and intent, which are elements of money laundering. The evidence of Vivas', Seresi's, and Saini's prior relationship also tends to establish the association and plan elements of conspiracy. The district court did not abuse its discretion in admitting the Rule 404(b) evidence to prove material elements of money laundering.
 
 B
 
 19
 The defendants also argue that the government failed to enunciate a specific purpose for admitting the other acts evidence. In demonstrating that Rule 404(b) evidence is relevant, the government must " 'articulate precisely the evidential hypothesis by which a fact of consequence may be inferred from the other acts evidence.' " United States v. Brooke, 4 F.3d 1480, 1483 (9th Cir.1993) (quoting Mehrmanesh, 689 F.2d at 830).
 
 
 20
 The defendants' argument focuses on the government's and the district court's failure to specify on which of the bases under Rule 404(b) the evidence was being offered and admitted. The government relied on all of the possible grounds for admission of the evidence listed in Rule 404(b). We will not reverse on this basis. See Mehrmanesh, 689 F.2d at 830-31.
 
 C
 
 21
 The defendants also argue that the district court failed to balance properly the probative value against the prejudicial effect of the evidence under Rule 403. We reject this argument.
 
 
 22
 Once it has been established that the other acts evidence is relevant, "the evidence is admissible only after the Government demonstrates to the trial court that, on balance, its probative value is not substantially outweighed by the danger of unfair prejudice to the defendant." Mehrmanesh, 689 F.2d at 830.
 
 
 23
 The district court heard extensive argument on the admissibility of the Rule 404(b) evidence, including argument related to its probative value and possible prejudicial effect. Even in the absence of a specific finding that the probative value outweighed the prejudicial effect of the evidence, "we will uphold admission of the evidence when it is clear from the record that the court implicitly made the necessary finding." Ramirez-Jimenez, 967 F.2d at 1326.
 
 
 24
 A finding that unfair prejudice was outweighed by the probative value of the evidence was justified in this case. Probative value is measured by the tendency of the evidence to make the existence of Vivas', Seresi's, and Saini's knowledge or intent more probable than it would be without the evidence. Id. at 1327. Unfair prejudice is measured by "the extent to which the testimony 'makes conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged.' " Id. (quoting United States v. Bailleaux, 685 F.2d 1105, 1111 (9th Cir.1982)). Evidence related to these defendants' activities involving Ropex prior to their involvement with the Andonians was highly probative of their knowledge, intent, preparation, and plan. There is little about this evidence, however, that would be emotionally provocative to the jury. We agree with the district court that the probative value of the evidence outweighed its prejudicial effect.
 
 D
 
 25
 Third, Vivas, Seresi, and Saini assail the district court's instructions to the jury related to the Rule 404(b) evidence. They contend the instructions were defective because they merely parroted the Rule without identifying the particular basis for which the evidence could be considered. They also argue that the instructions were perfunctory and did not guide the jury. Vivas argues that the instructions unfairly focused attention on him and that the district court's use of the word "against" in the instructions was prejudicial.
 
 
 26
 When Rule 404(b) evidence is admitted, the district court "should ordinarily instruct the jury carefully as to the limited purpose for which the evidence was admitted." United States v. Bradshaw, 690 F.2d 704, 709 (9th Cir.1982), cert. denied, 463 U.S. 1210 (1983). We hold that the district court did not abuse its discretion in delivering its limiting instructions to the jury. Although the instructions could have been more carefully tailored, we conclude the defendants were not denied a fair trial as a result of the instructions. Cf. Bradshaw, 690 F.2d at 709. The district court's failure to articulate precisely the bases on which the evidence was admitted caused no prejudice, because the evidence was admissible on most, if not all, of the asserted grounds. Nor did the district court's failure to identify Vivas, Seresi, and Saini individually with each instruction cause prejudice. Because the Rule 404(b) evidence was admitted, on each occasion, for consideration with respect to only these three defendants, it is reasonable to presume that the jury did not need constant repetition of their names, so long as the jury was informed generally that the evidence admitted was for the limited purpose previously identified by the district court.
 
 
 27
 Vivas' assertion that the jury instructions unduly focused attention on him is without merit. We reject the argument that the use of the word "against" in the district court's instructions led the jury to believe that all of the Rule 404(b) evidence demonstrated guilt. See United States v. Restrepo, 884 F.2d 1294, 1296-97 (9th Cir.1989).
 
 IV
 
 28
 The defendants argue that there was a prejudicial variance between the conspiracy charged and the conspiracy proved at trial. A variance occurs when the evidence offered at trial proves facts materially different from those alleged in the indictment. United States v. Van Stoll, 726 F.2d 584, 586 (9th Cir.1984). "A variance between indictment and proof does not require reversal unless it affects the substantial rights of the parties." United States v. Kaiser, 660 F.2d 724, 730 (9th Cir.1981), cert. denied, 455 U.S. 956 (1982).
 
 
 29
 * Because the asserted variance relates to a conspiracy charge, we must determine whether the single conspiracy charged has been proved. United States v. Bibbero, 749 F.2d 581, 586 (9th Cir.1984), cert. denied, 471 U.S. 1103 (1985). The question of whether a single conspiracy has been proved is essentially a question of the sufficiency of the evidence. Id. The evidence is sufficient if " 'viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " Id. at 586-87 (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).
 
 
 30
 We apply a "factors" analysis to distinguish multiple from single conspiracies. Bibbero, 749 F.2d at 587. "The relevant factors include the nature of the scheme; the identity of the participants; the quality, frequency, and duration of each conspirator's transactions; and the commonality of time and goals." Id. A single conspiracy may be identified either by isolating various elements under this factors analysis, or by aggregating the evidence under the general test of whether there was a single overall conspiracy. United States v. Zemek, 634 F.2d 1159, 1167-68 (9th Cir.1980), cert. denied, 450 U.S. 916, and 450 U.S. 985, and 452 U.S. 905 (1981). The evidence need not exclude every hypothesis but that of a single conspiracy; rather it is enough that it adequately supports a finding that a single conspiracy existed. United States v. Kenny, 645 F.2d 1323, 1335 (9th Cir.), cert. denied, 452 U.S. 920 (1981).
 
 
 31
 The defendants argue that although the indictment alleged a conspiracy between Vivas, Seresi, Saini, and the Andonians, the evidence at trial proved a larger conspiracy involving the defendants and activities in the Koyomejian indictment. We disagree.
 
 
 32
 We note first that the evidence related to the Koyomejian case was admitted under Fed.R.Evid. 404(b) as evidence of other crimes or acts committed by defendants Vivas, Seresi, and Saini. Regardless of the inconsistencies in the government's assertions before the district court, the decision to charge the Andonian conspiracy separately from the Koyomejian conspiracy is supported by the record. We do not require that the evidence exclude every hypothesis other than that of a single conspiracy. It is enough that the evidence be sufficient to allow a rational jury to find the single conspiracy alleged in the indictment.
 
 
 33
 We have no difficulty concluding that the evidence was sufficient to allow the jury to find that the single conspiracy alleged in the indictment existed. The nature of the scheme, the quality and frequency of transactions, and the commonality of time and goals all tend to show that the defendants were members of a single conspiracy. That Vivas, Seresi, and Saini had been, and continued to be, involved in the strikingly similar conspiracy alleged in the Koyomejian indictment does not alter our analysis of whether the conspiracy alleged here existed.
 
 
 34
 As to the Andonians, evidence establishing events prior to their joining the conspiracy does not constitute an impermissible variance. See, e.g., Bibbero, 749 F.2d at 588; United States v. Morse, 785 F.2d 771, 775 (9th Cir.), cert. denied, 476 U.S. 1186, 479 U.S. 861 (1986); United States v. Little, 753 F.2d 1420, 1448-49 (9th Cir.1984).
 
 B
 
 35
 Even if they established a variance, defendants are entitled to reversal only if their substantial rights are prejudiced. Morse, 785 F.2d at 775. Defendants contend that they were deprived of the right to trial on the charges presented to a grand jury, because the Rule 404(b) evidence dominated the trial. See id.
 
 
 36
 We reject this claim as nothing more than a restatement of the argument that the Rule 404(b) evidence should not have been admitted. Nor do we agree that the Rule 404(b) evidence dominated the trial.[3] More importantly, the evidence did not materially alter the charge in the indictment. Although the evidence of other crimes and acts contributed to the government's case that Vivas, Seresi, and Saini were members of a conspiracy, it did not rise to the level of altering the conspiracy charged in the indictment.
 
 V
 
 37
 The defendants argue that the district court should have severed the trials. We review for abuse of discretion the district court's denial of a motion to sever. United States v. Tootick, 952 F.2d 1078, 1080 (9th Cir.1991).
 
 
 38
 Vivas argues that his trial should have been severed from that of all the other defendants; Seresi and Saini argue that their trial should have been severed from that of Vivas and the Andonians; and the Andonians argue that their trial should have been severed from that of Seresi, Saini, and Vivas. All of the defendants base their arguments on two general theories: (1) that the jury could not be relied upon to compartmentalize the evidence against individual defendants; and (2) that the defendants presented mutually antagonistic defenses.
 
 
 39
 A defendant may be prejudiced by "spillover" of incriminating evidence. United States v. Escalante, 637 F.2d 1197, 1201 (9th Cir.) cert. denied, 449 U.S. 856 (1980). We have identified two critical compartmentalization issues: (1) whether the district court diligently instructed the jury on the purposes to which various strands of evidence may be put, and (2) whether the jury rendered selective verdicts indicating its ability to compartmentalize. United States v. Cuozzo, 962 F.2d 945, 950 (9th Cir.) (quotations and citations omitted), cert. denied, 113 S.Ct. 475 (1992).
 
 
 40
 We reject the assertion that the jury failed to compartmentalize. The district court instructed the jury as to the limited admissibility of certain evidence. The jury returned selective verdicts indicating that it found different levels of intent with respect to Vivas and Seresi and acquitting four other defendants.
 
 
 41
 Severance is also mandated if defendants present mutually antagonistic defenses. Tootick, 952 F.2d at 1081. Mutual inconsistency is not enough; rather, defendants must show that "acquittal of one codefendant would necessarily call for the conviction of the other." Id. at 1081. We find no merit in defendants' claims that their defenses were mutually antagonistic. The defense of Seresi and Saini differed from that of the Andonians in that Seresi and Saini claimed a state of mind influenced by Iglesias' assertion that the CIA was connected with the scheme. The Andonians merely pled ignorance of the source of the funds. The jury could believe either of these explanations without being required to convict other defendants as a result. Similarly, Vivas' defense, which was that the money was from legitimate sources did not necessarily conflict with Seresi's and Saini's defense, as they merely argued that, regardless of the source of the funds, they lacked criminal intent. Finally, Vivas' defense was not compromised by the Andonians defense, because the jury could have believed that the Andonians did not know or were deceived about the source of the funds without finding that Vivas was involved in criminal activity. Cf. United States v. Ramirez, 710 F.2d 535, 546 (9th Cir.1983).
 
 
 42
 Defendants contend that the district court erred in admitting the expert testimony of Special Agent Orton. The decision to admit expert testimony is committed to the discretion of the trial court, and will not be disturbed unless manifestly erroneous. United States v. Kinsey, 843 F.2d 383, 388 (9th Cir.), cert. denied, 487 U.S. 1223 (1988). "Erroneous admission of expert testimony is reversible if the admission more probably than not materially affected the verdict." United States v. Binder, 769 F.2d 595, 601-02 (9th Cir.1985).
 
 
 43
 At trial, cooperating government witness Mario Tankazyan testified that a teenage courier delivered a box containing $325,000 to R.A.O.F., one of the currency collection points. When asked if the amount in the box was correct, the courier divided the $325,000 by 25, arrived at $13,000, and responded, "Yeah, its right." Agent Orton testified that between 1987 and 1988, the wholesale price of cocaine ranged from $11,000 to $20,000 per kilogram. The government introduced this evidence to supports its theory that the courier was delivering the proceeds of a sale of 25 kilograms of cocaine.
 
 
 44
 Defendants first argue that the district court failed to exercise its discretion and abdicated its role to the government. This argument is unfounded. The record amply reflects that the district court grappled with whether to admit Agent Orton's testimony and decided to do so because the circumstances of the courier's statement suggested a narcotics transaction.
 
 
 45
 The defendants also argue that the testimony was irrelevant.[4] They note that the courier never mentioned a narcotics transaction or indicated that he was familiar with the price of cocaine. They also state that the record contained evidence that the price of gold ranged from $12,731 to $14,660 per kilogram. They assert that the courier's calculation does not lead to the conclusion that he was more likely referring to the price of cocaine than to the price of gold.
 
 
 46
 These arguments are not persuasive. Evidence is relevant if it has any tendency to make the existence of a material fact more probable or less probable than if the evidence were excluded. Fed.R.Evid. 401. Agent Orton's testimony was relevant because it tended to show that the courier was calculating the price of a kilogram of cocaine to determine if the amount of money in the box represented the proceeds of a particular sale of 25 kilograms of cocaine. Such testimony is not rendered irrelevant because the courier's statements could also be subject to other interpretations. Indeed, the defendants introduced evidence of the price of gold to support their theory of the case.
 
 
 47
 The defendants also argue that Agent Orton's testimony was unfairly prejudicial, because, had it been excluded, the jury would not have had a basis to conclude that the financial transactions related to cocaine sales and could only have concluded that they related to gold sales. This argument lacks merit.
 
 
 48
 The critical question is whether the probative value of relevant evidence was "substantially outweighed by the danger of unfair prejudice" or was "needless presentation of cumulative evidence." "Unfair prejudice," within the meaning of the rule, occurs when the evidence has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." It is evidence which "appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish," or otherwise "may cause a jury to base its decision on something other than the established propositions in the case."
 
 
 49
 United States v. Skillman, 922 F.2d 1370, 1374 (9th Cir.1990) (citations omitted), cert. dismissed, 112 S.Ct. 353 (1991). Testimony is not unfairly prejudicial merely because it tends to persuade the jury that the government's interpretation of the facts is more likely true than not. Agent Orton's testimony resulted in no unfair prejudice to defendants.
 
 
 50
 The defendants also argue that Agent Orton's opinion testimony was unfairly prejudicial. We have noted that the trial court should not routinely admit opinions of law enforcement officers, which often carry an aura of special reliability and trustworthiness. United States v. Espinosa, 827 F.2d 604, 612 (9th Cir.1987), cert. denied, 485 U.S. 968 (1988). In Espinosa, we upheld that admission of a law enforcement officer's testimony that a particular exchange was probably an exchange of narcotics for money, that "pay and owe" ledgers contained the names of cocaine buyers, and that the defendant was using a particular apartment as a "stash pad" for money and narcotics. Id. at 611-613. These types of concerns are not present here. Agent Orton's testimony was limited to issues related to the source, processing, and price of cocaine. He did not offer an opinion on whether the defendants were laundering the proceeds of narcotics trafficking. The district court did not abuse its discretion in admitting the testimony.
 
 VII
 
 51
 Defendants argue that there was insufficient evidence to convict them of money laundering. They note that the government did not introduce any direct evidence of actual narcotics transactions. Rather, it relied solely on circumstantial evidence to prove that the defendants knew that they were laundering money generated by illegal narcotics transactions. In effect, the defendants ask us to hold that the absence of direct evidence of narcotics trafficking is fatal to a charge of money laundering. We decline the invitation.
 
 
 52
 We review the sufficiency of the evidence in the light most favorable to the government to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Skillman, 922 F.2d at 1372. To prove money laundering, the government must show that
 
 
 53
 the defendant conducted a financial transaction which involved proceeds of unlawful activity, that he knew that the property involved was proceeds of some form of unlawful activity, and that he either (1) 'intend[ed] to promote the carrying on of specified unlawful activity' (18 U.S.C. Sec. 1956(a)(1)(A)(i)); or (2) knew that the transaction was designed in whole or in part 'to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity' (18 U.S.C. Sec. 1956(a)(1)(B)(i)).
 
 
 54
 United States v. Montoya, 945 F.2d 1068, 1076 (9th Cir.1991).
 
 
 55
 We have long since abandoned the distinction between direct and circumstantial evidence. E.g., United States v. Poland, 659 F.2d 884, 887 (9th Cir.), cert. denied, 454 U.S. 1059 (1981). Although there was no direct evidence of specific narcotics transactions, there was sufficient circumstantial evidence to tie the proceeds to drug trafficking and to allow the jury to infer knowledge on the part of all of the defendants, including, but not limited to the following:
 
 
 56
 (1) Cocaine originates in Colombia, where the "owners" of the funds were from;
 
 
 57
 (2) The funds were transferred to Cambio Italia and banks in Central and South America;
 
 
 58
 (3) The currency was delivered to the jewelry and gold businesses by young, Spanish-speaking men who used code names and numbers;
 
 
 59
 (4) The currency arrived in small bills in duffel bags, grocery bags, and boxes;
 
 
 60
 (5) A witness saw white powder on some of the currency and was told it came from someone having put the money next to drugs;
 
 
 61
 (6) A courier delivered $325,000 to a currency collection point, divided the amount by 25 to arrive at $13,000, and, at the relevant time, the wholesale price of cocaine ranged from $11,000 to $20,000;
 
 
 62
 (7) The defendants engaged in counter-surveillance types of activities, including relocating and renaming cash-collection shops, abandoning and hiding money, money counters, and ledgers when surveillance was detected, and discussing means of avoiding detection; and
 
 
 63
 (8) The defendants funneled, in 1988 alone, over $300,000,000 to banks in Central and South America.
 
 
 64
 The evidence was sufficient to allow the jury to find that the defendants engaged in illegal money laundering.
 
 VIII
 
 65
 Defendants Seresi and Saini claim that the district court erred in giving an Allen charge to the jury. We review for abuse of discretion the trial court's jury instructions. United States v. Cuozzo, 962 F.2d 945, 951 (9th Cir.), cert. denied, 113 S.Ct. 475 (1992). In reviewing an Allen charge, "we consider whether the instruction, taken in its context, had a coercive effect." Id.
 
 
 66
 Seresi and Saini contend that the Allen charge was coercive, as indicated by the jury's repeated notes to the court requesting additional instruction and by the length of time the deliberations had continued prior to the Allen charge. See United States v. Foster, 711 F.2d 871, 884 (9th Cir.1983), cert. denied, 465 U.S. 1103 (1984). Contrary to defendants' assertions, these factors weigh in favor of the charge. The Clerk's record indicates the jury was working actively to reach verdicts, and the four days of deliberations after the Allen charge demonstrate that the jury was not deadlocked. See Cuozzo, 962 F.2d at 952 (noting that several hours of deliberation did not raise a suspicion of coercion). The additional four days of deliberations, given the length and complexity of the evidence, is not unusual. The jury's ability to return verdicts of acquittal as well as guilt, coupled with its ultimate inability to reach a verdict on Count 1, indicate an absence of coercive effect.
 
 IX
 
 67
 Defendants argue the district judge should have recused himself from sentencing due to his personal bias, arguing that his comments when accepting pleas from other defendants suggested impermissible bias. We review for abuse of discretion the district judge's denial of the motion to recuse. United States v. Payne, 944 F.2d 1458, 1476 (9th Cir.1991), cert. denied, 112 S.Ct. 1598 (1992). To evaluate possible bias, we employ an objective test of "whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." Payne, 944 F.2d at 1476.
 
 
 68
 The comments during his acceptance of guilty pleas, taken as a whole, indicate that the district judge had strong feelings about the crimes alleged, wanted to deter these types of crime from occurring in the future, and wanted to ensure that the defendants who were pleading guilty gave meaningful cooperation to the government. We do not agree that these statements demonstrate bias toward the defendants taking their case to trial. Knowledge obtained by the district judge during these pretrial proceedings does not require reversal. United States v. Monaco, 852 F.2d 1143, 1147 (9th Cir.1988), cert. denied, 488 U.S. 1040 (1989).
 
 X
 
 69
 Seresi, Saini, and the Andonians challenge their sentences under the United States Sentencing Guidelines. We review for clear error the factual findings underlying the sentence. United States v. Burns, 894 F.2d 334, 336 (9th Cir.1990). We review de novo the district court's interpretation of the guidelines. United States v. Hayes, 7 F.3d 144, 145 (9th Cir.1993), cert. denied, 114 S.Ct. 1403 (1994).
 
 
 70
 Defendants challenge the district court's determination of the base offense level, the court's adjustments to the base offense levels, and the court's upward departure. They also argue that their sentences violate due process and equal protection principles.
 
 
 71
 * Defendants argue that their base offense levels should have been based on U.S.S.G. Sec. 2S1.2, rather than on Sec. 2S1.1. This argument has no merit. Section 2S1.1 applies if a defendant is convicted of money laundering pursuant to 18 U.S.C. Sec. 1956, as these defendants were. The argument that the evidence did not prove the source of the funds was drug trafficking goes to the issue of the sufficiency of the evidence for purposes of conviction. The evidence was sufficient both for conviction and for determination of the base offense level.
 
 B
 
 72
 The Andonians, Seresi, and Saini argue that they should not have received an adjustment to their base offense levels on the ground that over $300 million were laundered, because they were not each personally responsible for laundering this entire sum.
 
 
 73
 Section 2S1.1(b)(2)(N) provides for an adjustment of thirteen levels if the amount of money laundered was over $100 million. The government established that the total amount of funds laundered during the period of time alleged in the indictment exceeded $300 million. The government argues that under U.S.S.G. Sec. 1B1.3(a)(1) and general principles of coconspirator liability, each defendant is liable for all of the funds involved. See United States v. Changa, 901 F.2d 741, 744 (9th Cir.1990).
 
 We have held, however, that Sec. 1B1.3
 
 74
 is explicit in making a distinction among members of a conspiracy in terms of "the scope" of the activity. This approach distinguishes the Guidelines from the general harsh law of conspiracy that a conspirator is bound by all that has gone on before in the conspiracy. Under the Guidelines, each conspirator, for sentencing purposes, is to be judged not on the distribution made by the entire conspiracy but on the basis of the quantity of drugs which he reasonably foresaw or which fell within "the scope" of his particular agreement with the conspirators.
 
 
 75
 United States v. Petty, 992 F.2d 887, 890 (9th Cir.) (citations and quotations omitted), cert. denied, 114 S.Ct. 1015 (1993). Petty requires that the district court determine both the quantity of drugs distributed that were reasonably foreseeable by each defendant and the quantity of drugs distributed that were within the scope of the particular agreement that each defendant entered. Id. at 891.
 
 
 76
 We are aware of no specific findings by the district court as to the scope of each defendant's agreement or as to the reasonable foreseeability to each defendant of the amount of money laundered. As to the Andonians, the record demonstrates that the entire $316 million was funneled through their gold exchange business. However, we cannot say that, with respect to defendants Seresi and Saini, who were not personally involved in handling all of the funds, the lack of specific findings is harmless. We therefore remand to the district court for appropriate findings and, if necessary, resentencing consistent with those findings.
 
 C
 
 77
 Defendants also argue that they should not have received adjustments for their roles as organizers (Nazareth Andonian) or managers (Vahe Andonian and Seresi). U.S.S.G. Secs. 3B1.1(a) and (b) provide for a four-level adjustment based on the defendant's role as an organizer or leader and a three-level adjustment for the defendant's role as a manager or supervisor. We review for clear error district court's finding that these defendants were organizers or managers. United States v. Sanchez, 908 F.2d 1443, 1449 (9th Cir.1990).
 
 
 78
 The record reflects that Nazareth Andonian made significant decisions with respect to the trading of gold. The Andonians' business played a central role in processing the currency to buy gold, and they exercised authority over employees of several businesses. Seresi was an agent of Vivas, making decisions about how to continue the money-laundering operation in the face of numerous obstacles. It is irrelevant for purposes of the adjustment that many of those supervised by the defendants were acquitted. U.S.S.G. Sec. 3B1.1, comment. (n. 1).
 
 D
 
 79
 Defendants Vahe Andonian, Seresi, and Saini argue that their sentences should not have been adjusted for obstruction of justice. Section 3C1.1 provides for a two-level adjustment for the willful obstruction or attempted obstruction of justice. The district court found that Vahe Andonian perjured himself at trial. Andonian testified that he went to New York in May of 1988 for business reasons unrelated to recovering funds which had been abandoned by a coconspirator. This testimony was contradicted both by Andonian's asserted business contact, and by other witnesses who testified that Andonian went to New York to retrieve the funds. The district court did not clearly err in determining that Andonian committed perjury.
 
 
 80
 The district court found that Seresi instructed Saini to destroy evidence and that both defendants committed perjury. The destruction of records alone supports the district court's finding. U.S.S.G. Sec. 3C1.1(3)(1). The district court did not clearly err in determining that Seresi and Saini perjured themselves at trial.
 
 E
 
 81
 Defendants argue that the district court erred in departing upward from the guideline range. We review district court's decision to depart from the guidelines under a three-part test established in United States v. Lira-Barraza, 941 F.2d 745, 746-47 (9th Cir.1991) (en banc); United States v. Cruz-Ventura, 979 F.2d 146, 148 (9th Cir.1992).
 
 
 82
 The district court departed upward partly because U.S.S.G. Sec. 2S1.1(b)(2), which provides for an increase of thirteen levels where the amount of money laundered exceeds $100 million, does not provide for a greater increase for substantially larger sums. If the Commission had intended a scale that went beyond $100 million, it would have created a formula by which the sentencing court could calculate the number of levels to increase the base offense level. Instead, the Commission created a scale ending in "[m]ore than $100,000,000." U.S.S.G. Sec. 2S1.1(b)(2)(N). The district court's statement that "[t]hese defendants engaged in conduct which clearly was not contemplated by the drafters" is unfounded.
 
 
 83
 Nevertheless, the district court's one-level adjustment was justified on another basis. The district court also based the one-level adjustment on the sophistication and scope of the money laundering organization. The district court did not err in its finding that this money laundering operation was vast and sophisticated. This finding supports the one-level adjustment. See United States v. Shields, 939 F.2d 780, 783 (9th Cir.1991).
 
 F
 
 84
 Defendants challenge their sentences on constitutional grounds. Although the sentences are extreme, they do not violate the Constitution. See, e.g., Harmelin v. Michigan, 501 U.S. 957 (1990) (mandatory life sentence for drug crime not unconstitutional); United States v. Litteral, 910 F.2d 547, 551-553 (9th Cir.1990) (rejecting challenges to guidelines sentence based on equal protection and due process).
 
 X
 
 85
 The convictions of the defendants are affirmed. The sentences of Vivas, Vahe and Nazareth Andonian are affirmed. We remand to the district court for further findings and for resentencing, if necessary, of Seresi and Saini.
 
 
 86
 AFFIRMED IN PART AND REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 We have addressed Vivas' argument that his trial on the superseding indictment violated the doctrine of specialty in a separate opinion. Here, we consider the remaining issues related to the trial and sentences
 
 
 [2]
 We cite the slip opinion here because West Publishing failed to include the entire opinion in the bound volume in which Jones appears. See Jones, 982 F.2d 380 (9th Cir.1993)
 
 
 [3]
 Defense counsel estimated that the Rule 404(b) evidence constituted five to ten percent of that adduced at trial. While we need not adopt this assessment, we conclude that it is insufficient to establish that evidence of other crimes so dominated a trial as to result in a prejudicial variance. We similarly reject the assertion that because defendant objected to the admission of Rule 404(b) evidence approximately 86 times over an eight-month period, they have made out a claim of prejudicial variance
 
 
 [4]
 Vivas asserts that the evidence lacked "foundation." Properly characterized, his challenge is to the relevance of the evidence. Defendants do not challenge Agent Orton's qualifications